## ATLANTA AND WEST POINT RAILROAD COMPANY
### *v.* WEST, administrator.

1. To create the relation of master and servant there must be some contract or some act on the part of one person which expressly or impliedly recognizes another as his servant.
2. One into whose service another volunteers without his assent, express or implied, is not under the duties of a master toward a servant or required to anticipate or discover the peril of such volunteer, but is only bound, relatively to such volunteer, to use care not to injure him after notice of his peril.
3. Where a defendant has been guilty of no breach of any duty owing to the plaintiff, there can be no legal liability.
4. Where a volunteer engages in work undertaken in compliance with an unauthorized request of an employee of the defendant, the latter owes him none of the obligations of a master toward a servant, but is only bound to use care not to injure him after notice of his peril. The fact that the volunteer is of tender years and without sufficient mental capacity to appreciate the danger, while it might be an element of notice to the defendant of the peril of the volunteer, can not change the relations of the parties or impose upon the defendant any duty not ordinarily imposed by law relatively to volunteers.  *Rhodes* v. *Georgia R. Co.*, 84 *Ga.* 320, in part disapproved.
5. If the defendant had been negligent and relied upon the concurrent negligence of the plaintiff to defeat or diminish the recovery, then the infancy of the plaintiff would be material to the determination of his diligence; but the plaintiff's infancy can not change the relations of the parties or supply the place of negligence on the part of the defendant.

Argued November 19, 1904.—Decided January 26, 1905.

Action for damages. Before Judge Freeman. City court of Newnan. February 9, 1904.

*Dorsey, Brewster & Howell, H. A. Hall,* and *W. G. Post,* for plaintiff in error.    *W. C. Wright* and *J. B. S. Davis,* contra.

SIMMONS, C. J. An action for damages for personal injuries was brought by Simmie L. West, a minor, by his next friend, against the Atlanta and West Point Railroad Company. Pending this action Simmie L. West died, and his duly appointed and qualified administrator was made party in his stead. To the petition as originally filed the defendant had demurred. Subsequently the petition was amended in several particulars. The

defendant renewed its grounds of demurrer, and also filed other demurrers to the petition as amended. The court overruled the demurrers, and the defendant excepted. The petition after amendment set up the following facts: On the morning of June 14, 1901, a freight-train of the defendant became uncoupled because of a defective or broken coupling, and was stopped at and near a' certain public crossing for the purpose of repairing such coupling. While the repairs were being made, a portion of the train stood upon and obstructed the crossing. One of the tools used by the train-hands in repairing the coupling was an iron crowbar weighing about fifty pounds. While the repairs were in progress, young West, who came thither on his way to perform an errand for his father, after waiting for some time for the crossing to be cleared, went to the caboose or cab of the train to inquire when the crossing would be clear. When he approached the caboose, one of the brakemen on the train came up with a lot of tools which had been used to repair the coupling, among them the above-mentioned iron crowbar, and requested West to ascend the platform of the caboose and open the door so that the tools could be laid in the caboose. West, seeing no danger to himself in complying with this request, ascended the platform and was proceeding to unbolt and open the door when the brakeman handed him the crowbar, standing it up endwise and letting one end rest on the platform, and requested West to take hold of it. West took hold of the crowbar and was supporting it with one hand, the other being upon the door-knob and West being in the act of opening the door, when, "suddenly and violently and without warning signal and without warning to" West, the train was coupled together, the section attached to the engine coming in contact with the other section, of which the caboose formed a part, "with great force, and said train was then suddenly and quickly jerked and put in motion and with a sudden jerk, by reason and on account of which sudden coupling and contact and sudden starting and jerking of said train" West was thrown back and down, the door slammed upon his right hand, and the crowbar fell upon and broke his right leg. West suffered great pain in his hand and leg. The injury to the leg resulted in necrosis, and the leg had finally to be amputated. When West was requested by the brakeman to ascend the platform and open the

door of the caboose and take hold of the crowbar, both sections of the train were perfectly still, and he had no reason to suppose or presume that they would be suddenly coupled together with great force and jar and the train put in motion with a jerk without notice to him.     The brakeman was a man of long experience and apparently about fifty years of age, while West was only fifteen years and two months of age and "without mental capacity, knowledge, and experience to know or comprehend that there was any danger" in complying with the request of the brakeman, "and without sufficient knowledge, mental capacity, and experience to avoid any danger" to which so doing might subject him.     On account and by reason of West's tender years and inexperience he did not know, while he was on the platform, that the train might be coupled together suddenly and violently and without warning and put in motion with a sudden jerk.     At the time of the injury West did not "have the mental capacity, knowledge, and experience of an ordinary boy fourteen years old." West was without fault and in the exercise of due care, diligence, and circumspection, and his injuries were due wholly to the carelessness and gross negligence of defendant, its officers, agents, and employees.     The petition charged that "defendant was negligent on account of its said employee requesting [West] to ascend the platform of said cab and open said door, and in handing said iron crowbar up to [West] with the request that [West] take hold of same; and especially was defendant, its agents, officers, and employees grossly negligent in suddenly, violently, and with great force and jar coupling said sections of said train and causing them to come in contact as aforesaid, and then suddenly putting said train in motion with a jerk while petitioner occupied the position hereinbefore described, and in so coupling and starting said train without signal and without any notice or warning to [West]."     Damages were laid in the sum of $15,000.     The defendant's demurrers were based upon several grounds.     It demurred generally and on the ground that the petition failed to show that, on the occasion when West was injured, defendant owed him any duty or that the acts and doings of the defendant were any breach of any duty owing by the defendant to West. The other grounds of demurrer it is unnecessary here to mention.

1. It is virtually conceded that West was a volunteer, and not a

servant of the defendant. There was no contract of employment nor any act on the part of any authorized agent of the defendant which expressly or impliedly recognized West as the servant of the company. *Rhodes* v. *Georgia R. Co.*, 84 *Ga.* 320. " A person can not be subjected, without his own consent or that of his agent, to the obligations which the law has attached to the contract of hiring." 2 Labatt's Mast. & Serv. § 630.

2. One who, without any employment whatever or at the request of a servant who has no authority to employ other servants, voluntarily undertakes to perform service for the master, is a mere volunteer and not entitled to that degree of diligence on the part of the master which the latter is bound to exercise with reference to his servants. There are a great many cases which state that such a volunteer stands in the place of a servant, but in each such case which we have examined this position was taken in order to defeat the claim of the volunteer. In other words the court held that the volunteer certainly stood *in no better position* than that of a servant, and that, conceding he stood in the position of a servant, he could not recover. Such cases not infrequently arise where, if the volunteer had been a servant, he could not recover because injured by the negligence of a fellow-servant in the course of their common employment. A number of such cases will be found in the notes to § 631 of Labatt, Mast. & Serv. vol. 2. In Georgia the rule as to the liability of the master for the negligence of fellow-servants · has been abrogated in railroad cases and the claim of a volunteer can not be defeated by treating him as though he were a servant. It is necessary to assign him to his true position. He is not a servant, and can not charge the defendant with the obligations of a master. The defendant does not, as master, owe the volunteer any duty whatever. The obligations of master and servant do not arise between them. The defendant is only bound not to injure the volunteer wilfully and to use care not to injure him after notice of his peril. See Church · v. Railroad Co., 50 Minn. 218, 16 L. R. A. 861 ; Everhart v. Railroad Co., 78 Ind. 292, 41 Am. Rep. 567.

3. The petition clearly does not make out a case of injuries inflicted wilfully or because of a want of care after notice of West's peril. There is no allegation that the defendant's agents or employees who coupled and moved the train knew anything of

West's danger or of his position. Even the brakeman who requested West to get upon the platform does not appear to have had any notice that West's mental capacity was less than that usually possessed by boys of his age. The train was at a public crossing, but it does not appear that West could not get by it or that this had anything to do with his compliance with the brakeman's request to assist him. The brakeman does not appear to have had any authority to make West or any one else the servant of the defendant. There is no allegation that the brakeman had any authority, and his request can not be imputed to the defendant. The brakeman had no authority to invite West to get upon the platform, and the defendant was under no duty to anticipate that he would do so or to see that no injury resulted. Leaving out of consideration the minority of West, the case is simply that of a volunteer who places himself in a position of danger and who is injured by acts of the defendant which, relatively to a volunteer, do not constitute negligence. So far as appears from the petition the defendant was guilty of no breach of any duty which it owed West, and therefore can not be liable. Legal liability arises only upon the breach of some legal duty.

4. We think enough has been said to show that, had West been an adult, the defendant would not have been liable. West voluntarily engaged in work undertaken in compliance with the unauthorized request of the brakeman, and the defendant owed West none of the obligations which grow out of the relation of master and servant. The defendant was bound, through its agents and employees, to use care not to injure West after notice of his peril, and was bound not to injure him wilfully, but no breach of this duty appears. Defendant in error, however, contended that the demurrers were properly overruled, because of the allegations as to the minority and mental deficiency of West, relying upon the case of *Rhodes* v. *Georgia R. Co.*, 84 *Ga.* 320. After examining that case and also many decisions by other courts, we think this contention unsound. Infancy or want of mental capacity on the part of the plaintiff is often very material where the defense calls in question the plaintiff's own diligence. In other words, where the defendant has been negligent and claims that the plaintiff could by the exercise of due care have avoided the injury, or that the plaintiff did not use due diligence

to lessen the damages, or that plaintiff's negligence contributed to the injury, then the plaintiff's infancy or mental capacity is material. Whenever the plaintiff's diligence is under investigation, his mental capacity is relevant, as will be seen in many decisions in this and other States. In investigating the diligence of the defendant, the plaintiff's infancy or evident lack of mental capacity may sometimes become relevant as an element of notice to defendant of the plaintiff's peril. But in determining the relations of the parties, the infancy of the plaintiff is not material, nor can it supply the place of negligence on the part of the defendant. West was a mere volunteer. His age and mental capacity could not change this. If young and mentally deficient, he was no less a volunteer, relatively to the defendant, than if old and experienced. The defendant did not, as master, owe him any duty. The defendant was not guilty of a breach of any duty which it did owe him. The infancy of West could not supply the place of negligence on the part of the defendant, and there can be no recovery. The *Rhodes* case, supra, seems to conflict with this view, though the headnote recognized that there could be no recovery unless the defendant had been negligent. The decision in that case is by but two judges and not binding, and, in so far as it conflicts with what is here ruled, will not be followed. It has more than once been criticized by able law writers (3 Elliot on Railroads, § 1305; 2 Labatt on Mast. & Serv. § 636), and is, we think, unsound. We are clear in the present case that West's lack of mental capacity did not change his relations toward the defendant or impose upon it any of the obligations which ordinarily arise from the relation of master and servant; that the petition showed no breach of duty toward West as a volunteer; that West's infancy can not supply the place of negligence on the part of the defendant; and that the court below erred in overruling the defendant's demurrer. See, in relation to the relevancy of the volunteer's infancy, Flower *v.* Railroad Co., 69 Pa. St. 210, 8 Am. Rep. 251, and the numerous cases cited in the notes in the two text-books last above cited. Under the above view of the case it will not be necessary to notice all of defendant's special demurrers.

*Judgment reversed. All the Justices concur.*