MINNIE DUVALL, Respondent, v. ARMOUR PACKING COMPANY, Appellant.

Kansas City Court of Appeals, June 18, 1906.

1. **MASTER AND SERVANT: Contributory Negligence: Leaving Work: Volunteer.** If an employee voluntarily leaves the work assigned him and engages in other work for his employer and is injured thereat he cannot hold his employer liable; and so a girl engaged to weigh mince meat who voluntarily leaves the work to run a pressing machine temporarily deserted by its operator cannot recover for an injury received from the machine.

2. ———: ———: ———: ———: **Pleading: Evidence.** A petition bridges this chasm by proper allegations of an order from the master to operate the machine but at the trial there was a failure of evidence to show any such order.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

REVERSED.

*Angevine & Cubbison* and *W. V. Jordan* for appellant.

(1) The general denial in the defendant's answer put in issue the negligence charged against the defendant; and the request for a peremptory instruction to find for the defendant, challenges the sufficiency of the evidence to prove negligence. The plaintiff was set to work weighing meat, and was not directed to operate the machine, by any one authorized to give such direction, and she was a mere volunteer in operating the machine, and the defendant did not owe her the duty to keep the floor about the machine clean, or in any particular condition. Schaub v. Railroad, 106 Mo. 74; Railroad v. West, 121 Ga. 641, 49 S. E. 711; Coleman v. Lumber Co., 79 S. W. 981; Shadvan's Admr. v. Railroad, 82 S. W. 561; Railroad v. Doty, 133 Fed. 866; 20 Am. and Eng. Ency. of Law, 131; Saylor v. Parsons, 98 N. W. 500; Allan v. Hixon, 111 Ga. 460; Leistritz v. American Zyl. Co., 154 Mass. 382, 28 N. E. 294.

*Hamner, Hamner & Calvin* for respondent.

(1) We submit that under this evidence whether or not plaintiff was a mere volunteer as contended by appellant, was a question for the jury; and the trial court properly held it to be so; and by its instruction number one, in which it required the jury to first find that plaintiff was in the discharge of her duties. (2) Respondent submits that the many authorities cited by appellant, as persons mere volunteers not entitled to recover, etc., are correct expressions of the law as applicable to certain cases; but granting that plaintiff was a mere volunteer as to this particular work, respondent contends that it would be still a question for the jury. Railroad v. Scott, 68 Tex. 694, 5 L. R. A. 792; 16 L. R. A. 861 (many cases cited). (3) And assuming further

that it was a question in this case of a command by the foreman, we say that the evidence above showing that the foreman was always about the room, not more than thirty or forty feet away, that she took her place at the machine before, when the operator then at it left, that all times the person next took the machine, while the foreman was about—all was evidence of a command or order. Nash v. Brick Co., 109 Mo. App. 600.

ELLISON, J.—The plaintiff, a young woman of eighteen years, was an employee of the defendant, a meat packing establishment, and was injured by having her hand so bruised and broken as to make it necessary to amputate one of her fingers. She brought suit for damages, charging the defendant with negligence. She prevailed in the trial court.

The defendant is a large meat packing establishment where many products are turned out which are not strictly packed or cured meat. Among other things, it made mince meat of many ingredients mixed with meat. This mass would be separated into one pound packages and then put into a machine where it was compressed and made ready for the market. Plaintiff had been working for defendant about three weeks. When she began work it was in what was known as the mince meat room, and her work was weighing these packages of mince meat. She was hurt in that room while working temporarily at the pressing machine. Two girls generally worked the machine, though sometimes only one. When one or both the girls would leave the room temporarily, some other girl in the room, at work at something else, would go to the machine and run it during this temporary absence. It was during the temporary absence of these girls that plaintiff, who was nearest by, stepped up and continued the machine in operation for a few moments, when she suddenly slipped on the floor and in throwing out her hand to catch hold of anything within reach for protection from a fall, she

caught the hopper of the machine and the plunger struck her hand, inflicting the injury which she received.

The defendant contends that in leaving her work at weighing and going to and running the machine, plaintiff was a mere volunteer, and was outside of the duties of her employment. There is no doubt that if an employee voluntarily leaves the work for which he is engaged by his employer and engages in other work for such employer and while at the latter work is injured he cannot hold the employer liable. [Schaub v. Ry. Co., 106 Mo. 74; 20 Am. and Eng. Ency. Law, 131; Allen v. Hixson, 111 Ga. 460; Atlantic Ry. Co. v. West, 121 Ga. 641; Leistritz v. American Zyl. Co., 154 Mass. 382; B. & O. Ry. v. Doty, 133 Fed. Rep. 866.] These authorities are much in point. In the Schaub case, a brakeman left his place of duty on top of the car and went between cars to couple them. It was held he had no cause of action. In the Allen case, a young woman at work in a laundry, took hold of a machine at which she worked to show a defect to the foreman, her hand, like plaintiff's in this case, was crushed, but as it was not her duty to do what she did, her case failed. In the Atlantic Railway case, the plaintiff, a boy of fifteen, not in the employ of the railway company, in response to the request of a brakeman to aid him in a duty he was performing, volunteered to do so and had his hand and leg crushed. It was held that there was no liability because the boy had not been employed to do the service and no duty was owing to him in that respect. Though the boy was not in the employ at all in that case, yet it is applicable here for the plaintiff in this case was not in defendant's employ to run the machine. In the Leistritz case, the plaintiff, a boy of eighteen, was in the defendant's employ and his duty was to work at a machine in taking product from it while his companion fed it. But at time of accident he was feeding and got his hand caught. It was held that he had no case. And in Baltimore Railway Co. v. Doty, an engine hostler exchanged duties

with a watchman, and while thus performing the duties of the watchman, by running ahead of an engine to switch it, he fell into an improperly covered steam box and received injuries for which he sued the railway company, but it was held that on such ground his case failed, as being outside the duties he was employed to perform.

The plaintiff well avoided this rule of law by alleging in her petition that "defendant's foreman in charge of all of the employees in said room, had given to plaintiff a standing order and command to run and operate said machine at any time the employees who usually worked about said machine should cease to keep it going," and that she, "in obedience to such standing order and command of defendant's foreman, went to said machine to run and operate the same" during the temporary absence of those engaged in operating it. But the evidence in her behalf does not sustain the petition and for that reason her case fails.

She testified that she had been in defendant's employment three weeks when she was injured. That when she first went to work, the foreman instructed her as to her duties, that of weighing packages of mince meat. That he never instructed or directed her as to work at the machine, nor did he ever order or direct her to work at it. That he never spoke to her except when he instructed her about weighing. That one of the other girls in the room told her that when the girls, whose duty it was to run the machine, left it temporarily, the one of the girls engaged in weighing who happened to be next to it, would take her place. She did not know, or at least, did not remember, who the girl was from whom she heard this. She had seen others of the weigh girls do the same, though she herself had only done it once before and that for merely a few minutes. She testified that when she went to the machine, no one had told her to do so; that she went voluntarily.

There was, however, some endeavor made to show that the foreman, though he may not have ordered her

to this work, knew she was performing it. On this subject there was a total failure of proof. The room was large and there were a number of girls employed. As already stated, there had never been any, but one, conversation or word between plaintiff and the foreman after she began her employment, and that was about her duty as a weighing girl. She had never worked the machine but once and that only a few moments. At the time of the accident the foreman was at his desk in another part of the room thirty-five or forty feet away, with his back to her.

In order to aid and help out plaintiff's showing, one of the other girls testified in her behalf; but such testimony was strongly against the plaintiff. She stated that if the foreman wanted a girl to work at the machine he would go to her and say, "You may work on the machine to-day." And if he wanted one to work at the machine when a machine girl was absent, *"he would appoint another girl."* So it is plain that there is no evidence whatever that defendant's foreman ever ordered plaintiff to quit her duty as a weighing girl and go to the machine at any time. Nor is there any evidence that he knew she had ever done so until after this unfortunate accident.

In the sense of sympathy and a wish to help the injured, it is to be regretted that a deserving young woman should lose her case, but we cannot transfer one person's property to another, without warrant of law.

The judgment will be reversed. The other judges concur.