DIEFENBACH v. GREAT ATLANTIC & PACIFIC TEA CO.

1. NEGLIGENCE—INVITEES—VOLUNTEERS—RAT IN GROCERY STORE.
  Plaintiff who entered grocery store as an invitee, intending to make a purchase, but subsequently joined with several clerks in the pursuit of a rat and was injured when fish knife aimed at rat by defendant employee hit plaintiff's left foot *held,* a mere volunteer for injuries to whom grocer is not liable in the absence of showing clerk's action was wilful or wanton.

2. SAME—MASTER AND SERVANT—VOLUNTEERS—WILFULNESS AND
WANTONNESS.

> One who, without any employment whatever or at request of
> servant who has not authority to employ other servants, vol-
> untarily undertakes to perform service for the master, cannot
> recover for injuries, received while so engaged, not wilfully or
> wantonly inflicted by a servant.

3. SAME—UNAVOIDABLE ACCIDENT—CHASING RAT IN GROCERY—CUS-
TOMERS—VOLUNTEERS.

> Injuries received by customer who engaged in pursuit of rat after
> entering grocery store *held*, to have been received as result of
> unavoidable accident for which grocer was not liable, where
> plaintiff attempted to jump on rat at same time a clerk aimed
> a fish knife at it.

Appeal from Saginaw; Pierson (Alfred P.), J.
Submitted April 7, 1937. (Docket No. 9, Calendar
No. 39,264.) Decided June 7, 1937.

Case by Edward Diefenbach against Great Atlan-
tic & Pacific Tea Company, a New Jersey corpora-
tion, and Earl Hester, for personal injuries sus-
tained when struck with a fish knife while assisting
in the pursuit of a rat in defendant company's store.
Verdict and judgment for plaintiff. Defendants ap-
peal. Reversed without a new trial.

*Alfred F. Myer,* for plaintiff.

*Charles R. Fox,* for defendant company.

*Alfred Lindbloom,* for defendant Hester.

CHANDLER, J. The defendant, The Great Atlantic
& Pacific Tea Company, hereinafter referred to as
the A. & P. Co., is a New Jersey corporation duly
licensed to transact business in the State of Michi-
gan, owning and operating a number of stores in this
State. The defendant, Earl Hester, was an em-

ployee of said company, being manager of the meat department in a combination grocery store and meat market located in the city of Saginaw.

On October 16, 1934, plaintiff was sitting in a barber shop directly across from the A. & P. Co. store in which the facts involved in this case arose. The proprietor of the barber shop noticed a disturbance in the store and remarked that "they must be chasing a rat over there." Very shortly thereafter plaintiff went across the street and entered the store. He testified that as he entered someone instructed him to hold the door closed. At this moment he noted that the clerks were engaged in pursuing a rat and were using clubs and broom sticks for this purpose.

The store in question faces the south and the window space between the doorway entered by plaintiff and the east wall of the building is used for the purpose of a meat display. There is also a glass meat display case and counter extending along the east side of the room at an angle to the wall, leaving a space or aisle between the window and the meat case or counter. On the day in question this space was at least partially filled with leaves, cornstalks and pumpkins for decorative purposes.

Plaintiff held the door shut for a short time in accordance with the request that had been made when he entered. The rat had selected the corn stalks, leaves and pumpkins as a haven of refuge. One or two of the clerks were in the aisle or space at the end of the meat counter attempting to locate the rat. The plaintiff claims that the rat ran from its place of hiding directly toward him and that he jumped upon it. According to the plaintiff this action on his part was not motivated by a desire to participate in any sport which might have existed in

exterminating the unfortunate rat but rather to prevent the rat from biting him or running up his pant leg. Plaintiff then stepped off the rat which started to move around whereupon plaintiff stepped forward into the corn stalks and leaves and jumped upon him for the second time. At this point, the defendant Hester, who, unlike the other clerks, had selected a large fish knife as his weapon, approached in a crouching position from the end of the meat counter, saw the rat, dealt a blow with the fish knife, missed the rat and struck plaintiff's left foot for which he seeks damages in this action. Defendant Hester testified that he saw the rat but did not see the plaintiff and that he "didn't dream there was a foot there."

Motions on behalf of both defendants for a directed verdict were taken under advisement by the court under the Empson act (3 Comp. Laws 1929, §§ 14531–14534). The jury returned a verdict for the plaintiff. Motions for a judgment notwithstanding the verdict and for a new trial were denied. Defendants appeal.

Numerous reasons are set forth by defendants for reversal of the judgment. It is first contended that at the time plaintiff sustained the injury of which he complains he was a mere volunteer and that therefore the defendant A. & P. Co. is not liable for the act of its servant. On the other hand, it is plaintiff's claim that he enjoyed the status and rights of an invitee, that the defendant Hester, was guilty of negligence, and that the A. & P. Co. should be held to respond to him in damages therefor.

The plaintiff testified that when he left the barber shop and entered the store of the defendant that he did so for the purpose of purchasing groceries and denies that he entered the store merely for the pur-

pose of observing the rat hunt or to participate therein. Although the plaintiff actually purchased no groceries, if he entered the store for the purpose of transacting business mutual to himself and the A. & P. Co., he would undoubtedly enjoy the rights and status of an invitee and such a finding by the jury under those facts and circumstances alone would not be disturbed. But whatever may have been his status upon entering the store, we are of the opinion that when he participated in the killing of the rat he became a mere volunteer and under such circumstances the A. & P. Co. is not liable for his injuries.

He was under no obligation to assist the clerks in the performance of their duties. Neither did any emergency exist which would justify him in volunteering his services in behalf of the A. & P. Co. It would be unreasonable to suppose that four or five clerks intent upon destroying the rat could not have accomplished their purpose without the assistance of the plaintiff.

Plaintiff claims that he jumped upon the rat to prevent him from biting him or running up his pant leg. Assuming that the rat entertained such an uncharitable intention while plaintiff was near the door, having jumped upon him once, it was scarcely necessary for him to step into the corner with the corn stalks and leaves to jump upon him a second time and complete the kill.

Various reasons are assigned by the courts in denying recovery to a volunteer for injuries sustained. In *Johnson* v. *E. C. Clark Motor Co.*, 173 Mich. 277 (44 L. R. A. [N. S.] 830), numerous cases are collected and discussed. The reasoning adopted by some of the authorities there cited is that the volunteer cannot recover for the reason that were

he permitted to do so he would be granted a better legal position than would be enjoyed by one servant injured through the negligence of a fellow servant. The reasoning of such cases is rendered somewhat doubtful due to the provisions of the various workmen's compensation acts declaring that the negligence of a fellow servant shall be no defense to an action against the employer for injuries sustained in the course of the employment. The better view would appear to be that the volunteer cannot recover because no duty is owed to him other than not to injure him by wilful or wanton acts. In *Atlanta & West Point R. Co.* v. *West,* 121 Ga. 641 (49 S. E. 711, 67 L. R. A. 701, 104 Am. St. Rep. 179) it is said:

"One who, without any employment whatever or at the request of a servant who has no authority to employ other servants, voluntarily undertakes to perform service for the master, is a mere volunteer and not entitled to that degree of diligence on the part of the master which the latter is bound to exercise with reference to his servants. There are a great many cases which state that such a volunteer stands in the place of a servant, but in each such case which we have examined this position was taken in order to defeat the claim of the volunteer. In other words, the court held that the volunteer certainly stood in no better position than that of a servant, and that, conceding he stood in the position of a servant, he could not recover. Such cases not infrequently arise where, if the volunteer had been a servant, he could not recover because injured by the negligence of a fellow servant in the course of their common employment. A number of such cases will be found in the notes to 2 Labatt on Master and Servant (1st Ed.), § 631. In Georgia the rule as to the liability of the master for the negligence of fellow-servants has been abrogated in railroad cases and the claim of a volunteer cannot be defeated by

treating him as though he were a servant. It is necessary to assign him to his true position. He is not a servant, and cannot charge the defendant with the obligations of a master. The defendant, does not, as master, owe the volunteer any duty whatever. The obligations of master and servant do not arise between them. The defendant is only bound not to injure the volunteer wilfully and to use care not to injure him after notice of his peril.''

Having volunteered his services, the A. & P. Co. owed plaintiff no duty other than not to injure him by wilful or wanton acts. It is neither alleged, nor do the proofs indicate that plaintiff's injuries were the result of such action.

On the subject of volunteers generally, see 18 R. C. L. p. 578; *Kelly* v. *Tyra,* 103 Minn. 176 (114 N. W. 750, 115 N. W. 636, 17 L. R. A. [N. S.] 334); notes in 16 L. R. A. 861; 22 L. R. A. 663; 13 L. R. A. [N. S.] 561; 43 L. R. A. [N. S.] 187.

Moreover, we are of the opinion that the judgment must be reversed for still another reason as it does not appear that there was any actionable negligence on the part of the defendant Hester. It is clear from the record that simultaneously with the blow struck by Hester with the fish knife, plaintiff jumped upon the rat. Even if Hester had seen plaintiff, he could not have anticipated that plaintiff would jump upon the rat at the precise moment he attempted to kill the animal with the knife. Plaintiff's injuries were the result of an unavoidable accident.

The judgment is reversed without a new trial, with costs to the defendants.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and POTTER, JJ., concurred.