156 So.2d 748 (1963)
SHELBY MUTUAL INSURANCE COMPANY OF SHELBY, OHIO, a corporation, Appellant,
v.
FERBER SHEET METAL WORKS, INC., a corporation, Appellee.
No. E-184.
District Court of Appeal of Florida. First District.
October 8, 1963.
Rehearing Denied October 31, 1963.
Howell, Kirby, Montgomery & Sands, Jacksonville, for appellant.
Boyd, Jenerette & Leemis, Jacksonville, for appellee.
STURGIS, Chief Judge.
The appellant, defendant below, seeks reversal of a summary final judgment in favor of appellee, plaintiff below.
Appropriate assignments of error present the following points on appeal which are argued by appellant's brief: (1) That the trial court erred in denying appellant's motion to dismiss the amended complaint on the ground that it failed to state a cause of action. (2) That there existed issues as to material facts precluding entry of the summary final judgment appealed.
The amended complaint charges in substance: That in February 1957 appellee subcontracted with The George D. Auchter Company (a primary contractor) to do certain roofing and waterproofing work on property owned by a church, and by the contract agreed to indemnify the prime contractor against loss on account of any claims or liability arising during the period of five years from completion of the work as a result of deficiencies in such work, which was completed on December 14, 1957. It is alleged that on August 1, 1958 (approximately eight months after the work was completed) the appellant insurance company issued to appellee a policy of insurance for a period of one year insuring appellee "against liability imposed upon it by contract, products liability, accidents, negligence or warranty," which policy is attached to and made a part of the complaint; and that on August 1, 1959, and August 1, 1960, appellant issued to appellee identical policies each for a one-year period from date of issue. It is further alleged that on August 2, 1961, the church discovered that its pipe organ was damaged by water from a leak in the roof and called on the prime contractor to pay $750.00 for money expended on repairs to the organ *749 occasioned thereby; that the prime contractor called upon appellee to indemnify it under its subcontract. Appellee paid said sum to the prime contractor and then called on the appellant-insurer to reimburse it in that amount, relying on the terms of the insurance contract, and upon its refusal to do so brought this suit.
Motion of appellant to dismiss the complaint on the ground that it failed to state a cause of action was denied by an order which held that for the purposes of this action the loss described in the complaint is an "accident" within the intent and meaning of the terms of the policy of insurance. Appellant then filed an answer denying the material allegations of the complaint.
In due course appellant took discovery depositions of Marion L. O'Steen, an employee of appellee who in its behalf supervised the work done on the church pursuant to the contract between appellee and the prime contractor, and of Mr. P.E. Brant, who was the general superintendent and assistant secretary of the appellee corporation.
Mr. O'Steen's deposition reflects that he supervised appellee's work on the church which was completed in the latter part of 1957, and that about eighteen months later he was notified of a leak at about the 20-foot level of the roof, at which time he inspected the roof but did not find anything wrong; that in 1960 or 1961 (he was not sure as to the date) he was again called on to inspect the roof and at that time found a leak at about the 60-foot level in work done by appellee. He testified that this leak was occasioned by the fact that a copper base flashing, installed by appellee around a corner on the retaining wall at a point where a steeply inclined roof came by the retaining wall, had pulled apart at the point where it was turned around the corner; that this flashing was attached to a wooden rafter that was tied into a masonry wall; that the wood and masonry combined to produce an expansion and contraction that was too great for the flashing "the way it was designed to go around that corner"; that in his opinion the roof developed the leak because of faulty design of the flashing rather than due to the materials and workmanship furnished by appellee, and that the architect on the job was responsible for the design of the flashing. He further testified that he repaired the leak by placing fabric and plastic cement over the flashing so as to overcome some of the expansion and contraction. Following his deposition, Mr. O'Steen filed an affidavit stating that the appellee did not present any objection to the plans and specifications for the roof.
The deposition of Mr. Brant is to the effect that in his opinion the leak could not have resulted from anything other than a defect in the design of the roof, and that the repairs thereto, as testified to by Mr. O'Steen, had cured the defect.
The architect on the job made an affidavit stating his conclusion that faulty construction caused the water damage.
Under "Coverage D" of the insurance policies in suit activated August 1, 1958, and terminating August 1, 1961, the insurer is obligated
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."
The policy contains a provision rendering it inapplicable
"(a) to liability assumed by the insured under any contract or agreement except under coverages B and D, (1) a contract as defined herein or (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products."
It is clear, therefore, that the policies covered a loss of the character involved.
*750 We also note that under item "D" of the policy provisions governing limits of liability and reflecting the coverage, property damage liability includes "aggregate operations," "aggregate productive," "aggregate products," and "aggregate contractual." It is also noted that under Schedule One, item (d) of the policies, bearing the subcaption "Products (Including Completed Operations)," "Roofing" is included and the amount of premium is set forth for that coverage. Under the caption "Conditions" the policy purports to set out the exceptions to the coverage otherwise indicated; and careful examination shows no limitation against the type of loss involved.
On the question of the sufficiency of the complaint to state a cause of action, we conclude that the trial court correctly denied appellant's motion to dismiss. In that order the court held: "The loss described in the complaint filed herein is construed as an `accident' within the intent and meaning of the terms of the policy of insurance written by said Defendant [appellant]." Appellant insists that the loss occasioned by the leaking roof is not an accident within the terms of the policy, but the rule of law appears otherwise. The injury to the church organ is directly associated with and a result of the leak in the roof. The event cannot be said to be one that is normally expected, usual, or anticipated, hence it falls within the meaning of the term "accident" as employed in the policies.
In Geddes & Smith, Inc. v. Saint Paul-Mercury Indemnity Co., 51 Cal.2d 558, 334 P.2d 881 (1959), the defendant insurer contended that door failures which developed defects six months after installation did not constitute an accident within the meaning of the insurance contract so as to entitle the insured to recover losses sustained in the premises. In rejecting the contention of the insurer, the court said:
"No all-inclusive definition of the word `accident' can be given. It has been defined `as "a casualty  something out of the usual course of events, and which happens suddenly and unexpectedly and without design of the person injured." Rock v. Travelers' Ins. Co., 172 Cal. 462, 465, 156 P. 1029, 1036, L.R.A. 1916E, 1196; Richards v. Travelers Ins. Co., 89 Cal. 170, 175, 26 P. 762, [23 Am.St.Rep. 455.]' Zuckerman v. Underwriters at Lloyd's, 42 Cal.2d 460, 473, 267 P.2d 777, 784. It `"includes any event which takes place without the foresight or expectation of the person acted upon or affected by the event.'" * * * `Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause.' Hauenstein v. Saint Paul-Mercury Indem. Co., 242 Minn. 354, 65 N.W.2d 122, 126. The door failures were unexpected, undesigned, and unforeseen. They were not the result of normal deterioration, but occurred long before any properly constructed door might be expected to wear out or collapse. Moreover, they occurred suddenly. It bears emphasis that we are concerned, not with a series of imperceptible events that finally culminated in a single tangible harm (cf., Canadian Radium and Uranium Corp. v. Indemnity Ins. Co., 342 Ill. App. 456, 97 N.E.2d 132, 139-140), but with a series of specific events each of which manifested itself at an identifiable time and each of which caused identifiable harm at the time it occurred."
In New England Gas & Elec. Ass'n v. Ocean Accident & Guarantee Corp., 330 Mass. 640, 116 N.E.2d 671 (1953), it is said:
"The term accident, unlimited except by the word sudden, should be given its ordinary meaning as denoting an unexpected, undesigned, and unintended happening or a mishap and as including an event which, according to the common understanding of people in *751 general, would rightly be considered as an accident. Dow v. United States Fidelity & Guaranty Co., 297 Mass. 34, 38, 7 N.E.2d 426; Sheehan v. Goriansky, 321 Mass. 200, 205, 72 N.E.2d 538, 173 A.L.R. 497. Indeed, under a policy phrased as the instant one was, it was held that `In determining the meaning of the term "accident", as used in this policy, the question is not what it might mean to a scientist or one skilled in the subject involved, but what it means to the average man * * * the words "accident" and "accidental" should be given the meaning they impart in common speech.'"
In the case of Hauenstein v. Saint Paul-Mercury Indemnity Co., 242 Minn. 354, 65 N.W.2d 122 (1954), the plaintiff sold plaster to a contractor who used it on a construction job where, after application, the plaster shrunk and cracked, making it necessary to remove it and replaster the walls and ceiling. The insurer there, as in this case, was obligated to indemnify the insured for any loss which the insured became obligated to pay as "damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." In holding that the occurrence fell within the definition of accident, the court said:
"There is no doubt that the property damage to the building caused by the application of the defective plaster was `caused by accident' within the meaning of the insurance contract, since the damage was a completely unexpected and unintended result. Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause."
To the same effect see Bundy Tubing Company v. Royal Indemnity Company, 298 F.2d 151 (6th Cir.1962), holding that where tubing carrying hot water installed in concrete floors failed and leaked, causing damage to the building, the event constituted an accident within the meaning of an insurance policy containing the identical provision found in the policies involved on this appeal. The court said:
"The word `accident' is common in most liability policies and should not be construed in this type of case as not including claims involving negligence or breach of warranty. Diefenbach v. Great Atlantic & Pacific Tea Co., 280 Mich. 507, 273 N.W. 783; Pawlicki v. Hollenbeck, 250 Mich. 38, 229 N.W. 626; Hunt v. United States Accident Association, 146 Mich. 521, 109 N.W. 1042 [7 L.R.A., N.S., 938]; New Amsterdam Casualty Co. v. Jones, 135 F.2d 191 (C.A. 6)."
"Products Hazard," as defined by paragraph 3, subsection (g), found on page 6 of the insurance contract, is defined as follows:
"(g) Products Hazard. The term `products hazard' means
"(1) goods or products manufactured, sold, handled or distributed by the named insured or by others, trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;
"(2) operations, if the accident occurs after such operations have been *752 completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be `operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations."
It is obvious from this definition that unanticipated loss from accidental failure of appellee's products, including completed operations, is covered by the policy, otherwise no product hazard could exist within the meaning of the contract. "Completed operations" requires no definition because appellee actually paid a premium for coverage in the premises.
Holding as we do that the event producing the damage was an accident within the meaning of the insurance policy and that such accident occurred within a period covered by the policy, we direct our attention to the question of whether there existed any conflict as to a material fact precluding entry of the summary judgment. That question must be answered in the negative. It is not disputed that appellee guaranteed its workmanship and materials under the subcontract with the primary contractor for a period of five years following completion of the work. The pleadings and proofs before the court upon the motion for summary judgment unequivocally demonstrate that the damage to the organ was occasioned by a defect in the work done and/or materials furnished by the appellee in performing its roofing contract, or by a defect in the design of the roof which appellee was obligated to but did not correct; consequently, when the accident occurred the obligation of the appellant attached. The granting of the motion and entry of summary final judgment was proper under the circumstances. As heretofore noted, the coverage afforded under the insurance contract extended to completed "Roofing" operations for which appellee paid a premium.
The judgment appealed is affirmed.
WIGGINTON and CARROLL, DONALD K., JJ., concur.