RYDER TRUCK RENTAL, INC v URBANE

Docket No. 199136. Submitted December 9, 1997, at Grand Rapids. Decided March 6, 1998, at 9:20 A.M.

Ryder Truck Rental, Inc., a defendant in an action brought by Rowlf L. and Bernadette Hawkins in the Kent Circuit Court against it, Atlas Trucking, Inc., and Scott E. Urbane, filed a cross-complaint against Urbane for contribution and indemnity. Rowlf Hawkins had been injured when Urbane, while backing up a Ryder truck that he had rented from Atlas, had pinned Hawkins' legs against a wall. It was alleged that Rowlf Hawkins had volunteered to help Urbane move and, immediately before the accident, had been attempting to pull the loading ramp from the rear of the truck. Plaintiffs' cause of action against the corporate defendants was based on claims of negligence and breach of warranty that arose out of the allegation that Rowlf Hawkins' glove had become caught on the ramp handle. Ryder settled with the Hawkinses and was permitted to file a cross-claim against Urbane for contribution and indemnification. The court, Robert A. Benson, J., granted summary disposition for Urbane with respect to the claim of the Hawkinses on the basis that under the volunteer doctrine Urbane owed Rowlf Hawkins only a duty of care not to injure him through wilful and wanton acts and granted summary disposition for Urbane with respect to Ryder's cross-claim for contribution on the basis that the dismissal of the Hawkinses' claim against Urbane on the basis of the volunteer doctrine likewise precluded Ryder's recovery of contribution from Urbane. The court subsequently, on stipulation of the parties, dismissed Ryder's remaining claim for indemnification. Ryder and Atlas appealed.

The Court of Appeals *held*:

1. Ryder may recover contribution from Urbane only if it is a joint tortfeasor with him. Whether Urbane is a joint tortfeasor hinges on whether he owed the same duty of care to Rowlf Hawkins as was owed by Ryder. If the volunteer doctrine is applicable under the circumstances of this case, Urbane owed Rowlf Hawkins only the duty of care not to injure him through wilful and wanton acts. Accordingly, if the volunteer doctrine applies in this case relative to the Hawkinses' claim against Urbane, Ryder and Urbane would not be joint tortfeasors because the duty of care owed by

Ryder to Rowlf Hawkins was the refraining from acts of ordinary negligence rather the refraining from only acts of wilful and wanton conduct.

2. The volunteer doctrine is a limitation with respect to respondeat superior liability. Under the volunteer doctrine, a master is not liable to a third person having the status of a volunteer for acts resulting from the ordinary negligence of a servant.

3. Under the facts pleaded in this case, Rowlf Hawkins is properly regarded as having the status of a volunteer for the purpose of the application of the volunteer doctrine.

4. The volunteer doctrine has application only where the claim of liability arises in the context of the vicarious liability of a master under the doctrine of respondeat superior for the acts of the master's servant. There is no support in the settled law of this state or elsewhere for extending the application of the volunteer doctrine beyond liability arising out of vicarious liability under the doctrine of respondeat superior and to thereby create an idiosyncratic niche where one would be shielded from liability for one's own acts of ordinary negligence. Accordingly, because the volunteer doctrine is not applicable with respect to Rowlf Hawkins' claim against Urbane and, thus, the standard of care owed by Urbane relative to that claim is for ordinary negligence, Urbane and Ryder are joint tortfeasors. Therefore, it was error to grant summary disposition for Urbane with respect to Ryder's claim for contribution.

Reversed.

CORRIGAN, C.J., concurring in the result, stated that while it was error for the trial court to grant summary disposition for Urbane with respect to Ryder's claim for contribution, the error arose not because the volunteer doctrine is applicable only to liability arising out of a master's vicarious liability under the doctrine of respondeat superior for the acts of servants, but rather because, although the volunteer doctrine is applicable under circumstance involving an individual's own liability, the doctrine is applicable only where the volunteer had not been invited to act, and there remains a question of fact whether Urbane invited Rowlf Hawkins to assist him.

1. CONTRIBUTION — JOINT TORTFEASORS — DUTY OF CARE.

   A party has a right to seek contribution for the payment of a judgment only from joint tortfeasors; joint tortfeasors are parties whose liability arises out of breaches of similar duties of care.

2. MASTER AND SERVANT — VOLUNTEER DOCTRINE — VICARIOUS LIABILITY — RESPONDEAT SUPERIOR.

   The volunteer doctrine is a limitation with respect to liability based on the doctrine of respondeat superior; under the volunteer doc-

trine, a master is not liable to a third person having the status of a volunteer for acts resulting from the ordinary negligence of a servant; the doctrine has no application with respect to a claim that is based on direct, rather than vicarious, liability.

*VandeVeer Garzia, P.C.* (by *Hal O. Carroll* and *William J. Heaphy*), for Ryder Truck Rental, Inc., and Atlas Trucking, Inc.

*Nelson & Kreuger, P.C.* (by *Steven L. Kreuger*), for Scott E. Urbane.

Before: CORRIGAN, C.J., and DOCTOROFF and FITZGERALD, JJ.

FITZGERALD, J. Defendants Ryder Truck Rental, Inc., and Atlas Trucking, Inc.,[1] appeal as of right the order dismissing Ryder's cross-claim against defendant Urbane for indemnification. On appeal, Ryder challenges only the order dismissing its claim for contribution from Urbane. We reverse.

Plaintiff Rowlf Hawkins injured himself while assisting defendant Urbane in moving Urbane's property from Urbane's residence. Urbane had earlier helped Hawkins and his fellow church members construct a playground at a parochial school. In response to Hawkins' inquiry during the project, Urbane allegedly informed Hawkins that he would need help moving. On the date of the accident, Hawkins was waiting at Urbane's house when Urbane returned home from work. Urbane had rented a truck from defendant

---

[1] The claim of appeal named both Ryder and Atlas as appellants even though the order being appealed from made reference to Ryder only. Indeed, because this appeal involves a cross-complaint brought by Ryder only, it would appear that Atlas lacks standing to appeal from the contested order. Accordingly, the issues raised in this appeal will be treated as if raised by Ryder alone.

Atlas Trucking, doing business as Ryder Truck Rental, for use in moving. As Urbane backed up the truck, Hawkins caught his glove on a ramp handle while attempting to pull the ramp from the rear of the truck. Urbane continued to back up, pinning Hawkins' legs against the house.

Hawkins commenced this action against Urbane for negligence and against Atlas and Ryder for negligence and breach of warranty. The trial court orally granted Urbane's motion for summary disposition under MCR 2.116(C)(10) because under the volunteer doctrine, Urbane owed Hawkins only a duty of care not to injure him through wilful or wanton acts. Before the court entered any written order, however, Ryder settled with Hawkins, extinguishing all Hawkins' claims. Ryder then moved for leave to file cross-claims against Urbane for contribution and indemnification. The trial court granted the motion and then immediately dismissed Ryder's claim for contribution on the ground that its determination regarding Urbane's liability for Hawkins' injuries likewise precluded Ryder's recovery for contribution.[2] The court subsequently dismissed Ryder's cross-claim against defendant Urbane for indemnification.

Ryder argues that the trial court erred in dismissing its contribution claim because the volunteer doctrine is no longer viable and, even if viable, does not apply outside the workplace. This Court reviews this question of law de novo. *In re Lafayette Towers*, 200 Mich App 269, 273; 503 NW2d 740 (1993). Ryder may

---

[2] During oral argument regarding Ryder's motion, Ryder waived any defects in notice and conceded that Urbane was entitled to summary disposition based on the trial court's prior ruling on Urbane's motion regarding Hawkins' claim.

recover contribution only from a joint tortfeasor. MCL 600.2925a(3); MSA 27A.2925(1)(3); *Miller v Riverwood Recreation Center, Inc*, 215 Mich App 561, 564; 546 NW2d 684 (1996). Whether Urbane was a joint tortfeasor in this case hinges on what duty of care he owed Hawkins, because Ryder claims that Urbane's actions constituted mere negligence, not wilful or wanton conduct. Cf. *Clark v Dalman*, 379 Mich 251, 260; 150 NW2d 755 (1967).

The volunteer doctrine, as described in *Diefenbach v Great Atlantic & Pacific Tea Co*, 280 Mich 507, 512-513; 273 NW 783 (1937), is a limitation purely on respondeat superior liability. Under the volunteer doctrine, a master is not liable for ordinary negligence of his servant who has injured a third person having the status of a volunteer. Our concurring colleague would extend the volunteer doctrine to insulate from tort liability any person directly liable for negligence toward a volunteer. Nothing in *Diefenbach* suggests this result. *Diefenbach* itself was a suit against only the A & P Company, not against any of its servants, agents, or employees.

Here, we are asked to address the liability of Urbane, who asked Hawkins to return a prior favor by volunteering his services. Accordingly, Hawkins is properly regarded as having the status of a volunteer under the test established in *Pace v Gibson*, 357 Mich 315, 319; 98 NW2d 654 (1959), overruled in part on another ground *Felgner v Anderson*, 375 Mich 23, 56; 133 NW2d 136 (1965).

For present purposes, in the context of a motion for summary disposition, we assume that Urbane negligently harmed Hawkins, but that his negligence was ordinary and did not rise to the level of being wilful

or wanton. No reason appears why Urbane should escape direct liability for his tortious behavior simply because his negligence was confined to ordinary carelessness. Indeed, this Court has many times recognized that a volunteer who would normally have the status of merely a social guest (licensee) can become a business guest (invitee) for purposes of premises liability if performing any act or service of benefit to the invitor, *Leveque v Leveque*, 41 Mich App 127, 131; 199 NW2d 675 (1972); *Doran v Combs*, 135 Mich App 492, 494-496; 354 NW2d 804 (1984); *White v Badalamenti*, 200 Mich App 434, 436-437; 505 NW2d 8 (1993), and the Supreme Court has likewise recognized this principle without mentioning anything about the volunteer doctrine. *Kreski v Modern Wholesale Electric Supply Co*, 429 Mich 347, 359; 415 NW2d 178 (1987).

This analysis is buttressed by noting that, according to 2 Restatement Torts, 2d, § 496A, pp 560-565, volunteer status is relevant only in terms of assumption of the risk. However, Michigan jurisprudence limits invocation of the assumption of the risk doctrine to the master and servant context, in terms of vicarious liability. *Felgner, supra* at 39, 45, 56. Thus, it would be a misinterpretation of the volunteer doctrine to invoke it for the purpose of insulating a person from liability for his own personal tortious breach of duty.

The notion that *Diefenbach* applies only with respect to respondeat superior liability is supported by *Chamberlain v Haanpaa*, 1 Mich App 303, 309; 136 NW2d 32 (1965), which discusses the volunteer doctrine as though it applies exclusively in the vicarious liability context. The volunteer doctrine is similarly treated exclusively in terms of respondeat supe-

rior liability of the master, rather than direct liability of a negligent servant, in anno: *Duty of proprietor toward visitor upon premises on private business with or errand or work for employee,* 94 ALR2d 6, 15, n 10 (1964). Additionally, *Diefenbach* was read no more broadly than this, and within this context considerably narrowed, in *Pace, supra.*

There are few common-law doctrines, if any, that immunize negligent actors generally, or even in particular classes, from liability for their own tortious conduct. Such common-law doctrines as ever did exist in Michigan jurisprudence have gone the way of the dodo, the great auk, and the dinosaur. *Williams v Detroit,* 364 Mich 231, 250; 111 NW2d 1 (1961), abolished common-law governmental immunity, thereby "righting an age-old wrong." *Montgomery v Stephan,* 359 Mich 33, 38; 101 NW2d 227 (1960), overruled centuries of tort jurisprudence that precluded a wife from suing for loss of consortium of her husband, opining that the old case law stood as "a reproach to law and conscience alike," and could not remain if the court were to fulfill its oath "to do justice, not to perpetuate error." The common-law immunities that remain[3] are all supported by compelling public policy

[3] These immunities include: judicial, *Mireles v Waco,* 502 US 9, 11; 112 S Ct 286; 116 L Ed 2d 9 (1991), and quasi-judicial immunity for witnesses, *Martin v Children's Aid Society,* 215 Mich App 88, 96; 544 NW2d 651 (1996), and nonjudicial adjudicators and mediators, *Sanders v Leeson Air Conditioning Corp,* 362 Mich 692, 695; 108 NW2d 761 (1961); *Boraks v American Arbitration Ass'n,* 205 Mich App 149; 517 NW2d 771 (1994); immunity for those conscripted into public service pursuant to the *posse comitatus* ("power of the county"), *Rex v Pinney,* 110 Eng Rep 349, 355 (1832); *Regina v Secretary of State for the Home Dep't ex parte Northumbria Police Authority,* [1988] 1 All Eng Rep 556, aff'g [1987] 2 All Eng Rep 282, *Firestone v Rice,* 71 Mich 377; 38 NW 885 (1888); the privilege of legislators to be free from civil process, Const 1963, art 4, § 11; *Auditor General v Wayne Circuit Judge,* 234 Mich 540; 208 NW 696 (1926), and

rationales. Neither the *Diefenbach* opinion nor the concurring opinion in the present case provides any precedential support for the extension of the volunteer doctrine beyond the vicarious liability context.

Nowhere are private citizens immune for their own tortious acts. The common law has been concerned, rather, with expanding the universe of persons who may be held liable in tort, and the volunteer doctrine fits within that context as a limit on vicarious liability. To distort *Diefenbach* and hold that it establishes immunity for personal negligence directly perpetrated carves out of our tort jurisprudence a wholly idiosyncratic niche wherein negligence has free reign, for which no principled public policy justification, nor textual support in the law, has been proposed or advanced.

Reversed.

DOCTOROFF, J., concurred.

CORRIGAN, C.J. (*concurring in result*). I concur in the majority's decision to reverse, but write separately because I disagree with the majority's reasoning. I do not agree with the majority that the volunteer doctrine is limited to respondeat superior liability. I would, however, hold that the trial court erred in granting summary disposition because a question of fact exists whether the volunteer doctrine applies in this case.

---

"speech or debate" immunity, *Wilkins v Gagliardi*, 219 Mich App 260, 269-270; 556 NW2d 171 (1996); *United States v Nelson*, 486 F Supp 464 (WD Mich, 1980), which extends to members of local legislative bodies, *Frohling v Carpenter*, 203 Mich App 368; 512 NW2d 6 (1993); and the similar official communications privilege for military and naval officers, *Couch v Schultz*, 193 Mich App 292; 483 NW2d 684 (1992).

The majority holds that the volunteer doctrine does not apply in this case because the doctrine, as described in *Diefenbach v Great Atlantic & Pacific Tea Co*, 280 Mich 507; 273 NW 783 (1937), is a limitation purely on respondeat superior liability. I do not agree that the volunteer doctrine is so limited.

Our Supreme Court stated in *Pace v Gibson*, 357 Mich 315, 319-320; 98 NW2d 654 (1959), that it recognized in *Diefenbach* "the general rule that one who is merely a volunteer in rendering services to another cannot recover if injured because of negligence, there being no duty other than not to injure him by willful or wanton act." The Court's description of the doctrine is consistent with that of other general authorities. 65 CJS, Negligence, § 63(148), p 935, states:

> A person engaged in work, or the owner or occupier of land, owes no duty to exercise ordinary care toward a mere volunteer, and is liable only for gross negligence, willfulness, or wantonness.

27 Am Jur 2d, Employment Relationship, § 282, p 772, similarly describes the volunteer doctrine as follows:

> The duties required by law of an employer with respect to its employees are generally not owed by the employer to a person whom the employer has not authorized to render services as an employee. In particular, a person who of his own volition volunteers to do work for another without that person's knowledge generally cannot recover for breach of a duty owed by an employer to an employee.

The foregoing authorities demonstrate that the volunteer doctrine sets forth the duty of care that a master owes a volunteer. "Duty is essentially a question of whether *the relationship between the actor and the injured person* gives rise to any legal obliga-

tion on the actor's part for the benefit of the injured person." *Moning v Alfono*, 400 Mich 425, 438-439; 254 NW2d 759 (1977) (emphasis added). The duty arising out of the master and volunteer relationship is not limited to a specific form of liability. Therefore, the doctrine applies whether the master's liability arises from his own act or that of a servant.

The majority additionally contends that the Restatement Torts, 2d, and Michigan case law regarding assumption of risk support its assertion that the volunteer doctrine is limited to vicarious liability in the master and servant context. Contrary to the majority's assertion, however, 2 Restatement Torts, 2d, § 496A, pp 560-565, does not discuss volunteers per se, it merely discusses situations where someone "voluntarily" assumes a risk. In *Felgner v Anderson*, 375 Mich 23, 39, 45, 56; 133 NW2d 136 (1965), also cited by the majority, the Court noted that in prior cases it had applied the doctrine of assumption of risk in the context of master and servant relationships to limit the employer's liability for the consequences of another's (a servant's) act. The Court cited language in *Pace, supra*, as an example of a case where uncertainty exists in how the Court used language of assumed risk. *Felgner, supra* at 51. In *Pace, supra* at 325, the Court stated:

> Under the circumstances here presented it cannot be said as a matter of law that plaintiff was a mere volunteer. He did not, in consequence, assume the risk of being injured by ordinary negligence on the part of defendant or his employee, and may not be charged with contributory negligence on such basis.

Our Supreme Court's use of assumption of risk language in *Pace*, however, is contrary to the rationale

for the volunteer doctrine as set forth in *Diefenbach,
supra.*

In *Diefenbach, supra,* the Court neither discussed
assumption of risk as the underlying rationale for the
volunteer doctrine nor limited the doctrine to respon-
deat superior liability. The Court rejected alternate
rationales for the volunteer doctrine, explaining that
the "better view would appear to be that the volun-
teer cannot recover because no duty is owed to him
other than not to injure him by wilful or wanton
acts." *Id.* at 512. The Court then quoted extensively
from *Atlanta & W P R Co v West,* 121 Ga 641; 49 SE
711 (1905). The *West* court reasoned that a volunteer
is not entitled to the same degree of diligence on the
part of the master as the master is bound to exercise
with reference to servants because a volunteer is not
a servant. The *West* court noted that in prior cases
involving injuries inflicted by fellow servants, courts
equated a volunteer with a servant because a volun-
teer could stand in no better position than a servant,
who could not recover from the master for injuries
caused by a fellow servant. The *West* court, however,
further explained that when the Legislature has abro-
gated the rule of nonliability, volunteers must be
assigned their true positions and the obligations of
master and servant do not arise between them. *Die-
fenbach, supra* at 512-513 (quoting *West, supra*).
Given the focus on the relationship between the
master and the volunteer, not the identity of the negli-
gent actor, the *Diefenbach* Court's rationale simply
does not support limiting the volunteer doctrine to
respondeat superior liability.

Further, contrary to the majority's assertion, the
volunteer doctrine, as adopted by the Court in *Die-*

*fenbach*, does not "insulate from tort liability any person directly liable for negligence toward a volunteer." *Ante* at 523. The volunteer doctrine does not apply to an injured volunteer's claim against a master's allegedly negligent servant because the doctrine establishes the duty owed by a master to a volunteer, not the duty owed by the master's servant to a volunteer. *Georgia Hwy Express, Inc v Rountree*, 130 Ga App 792, 794; 204 SE2d 512 (1974). Regarding the master's negligence, however, the doctrine clearly provides that the master owes the volunteer only a duty of care not to injure him by wilful or wanton acts. *Diefenbach, supra* at 512-513.

In the end, the majority acts contrary to both our Supreme Court's written word and underlying rationale in limiting the Court's holding in *Diefenbach, supra,* to respondeat superior liability. This Court has no authority to take such action because a decision of our Supreme Court is binding on this Court until the Supreme Court overturns it. *O'Dess v Grand Trunk W R Co,* 218 Mich App 694, 700; 555 NW2d 261 (1996). Whether the volunteer doctrine should be limited in Michigan to respondeat superior liability, otherwise modified, or abandoned altogether, are questions properly addressed to our Supreme Court. Absent later decisions by the Court that call into doubt the breadth of *Diefenbach's* holding, this Court may not limit that holding, but rather, must apply it as written until further consideration of the issue by our Supreme Court.

I nonetheless concur in the majority's decision to reverse because a question of fact exists whether the volunteer doctrine applies in this case. In order for the volunteer doctrine to apply, the master must not

have authorized the volunteer to render services. Stated otherwise, the master must not have invited the volunteer to render services. 65 CJS, Negligence, § 63(148), pp 935-936 ("One who is engaged in work or an operation owes to another who undertakes to assist him as a mere volunteer, *without invitation* and without contractual relationship, no duty of care . . . . [A] duty to exercise care may exist . . . *because such person is invited or requested to act.*") (emphasis added); 27 Am Jur 2d, Employment Relationship, § 282, p 772 ("[A] person who of his own volition volunteers to do work for another *without that person's knowledge* generally cannot recover for breach of a duty owed by an employer to an employee.") (emphasis added). The passage from *West, supra,* at 644 quoted by the Court in *Diefenbach, supra* at 512, likewise makes this distinction:

> One who, *without any employment whatever or at the request of a servant who has no authority to employ other servants,* voluntarily undertakes to perform service for the master, is a mere volunteer and not entitled to that degree of diligence on the part of the master which the latter is bound to exercise with reference to his servants. [Emphasis added.]

Other courts have reached the same result where the master invites the injured person to act by labeling the injured person a "gratuitous servant" or "gratuitous employee," rather than a volunteer.[1] See *Milbank*

---

[1] *Severinson v Nerby,* 105 NW2d 252, 256 (ND, 1960), is an example of circumstances where the court may apply the volunteer doctrine even when the volunteer renders services in the master's presence because the master did not invite the volunteer to act. In *Severinson,* the defendant was an independent contractor who contracted with the plaintiff's employer to construct a concrete foundation for a building. The plaintiff was at the job site on behalf of his employer to furnish water for defend-

*Mut Ins Co v Dairyland Ins Co*, 373 NW2d 888, 893 (ND, 1985); *Murdock v Peterson*, 74 Nev 363, 365; 332 P2d 649 (1958).

In both *Diefenbach* and *Pace*, the master's servant allegedly solicited the help of the injured person or invited the injured person to act. The master did not acquiesce in the arrangement or grant the servant the authority to engage the services of the injured person. Compare *Kavigian v Lonero*, 312 Mass 603; 45 NE2d 823 (1942). Accordingly, both cases turned on whether the injured person was, in fact, a volunteer. In *Pace*, the Court held that the injured person was not a volunteer because he had an interest in the work. See also *Fletcher v Kemp*, 327 SW2d 178, 182 (Mo, 1959); *Rountree, supra* at 794. By contrast, the master (Urbane) in the instant case allegedly invited the volunteer (Hawkins) to act. If Urbane did invite Hawkins to act, the volunteer doctrine would not apply, irrespective of whether Hawkins would otherwise be classified as a volunteer.[2]

---

ant's cement mixer under the contract. The defendant asked the plaintiff if he had a grease gun, because the defendant needed to grease his cement mixer. The plaintiff retrieved a grease gun and, without prompting from the defendant, greased the mixer and injured himself in performing the task. The court held that the plaintiff was a volunteer and not a gratuitous employee because the defendant did not expressly or implicitly request his help.

[2] The invitation-to-act element is not the equivalent of invitee status. I agree with the trial court that Hawkins would be classified as a volunteer if the volunteer doctrine applies in this case. A person's status as a volunteer turns on whether he has an interest in the work. *Chamberlain v Haanpaa*, 1 Mich App 303, 309; 136 NW2d 32 (1965). A person in regular pursuit of his own business is not a volunteer for purpose of the volunteer doctrine. See *id.* at 309-310. I reject Ryder's argument that an informal social exchange of assistance satisfies the interest test. This gratuitous rendering of services in return for a past favor does not establish an interest in the work sufficient to create an issue of fact whether a person is a volunteer. The volunteer doctrine, however, is founded on the notion that no duty of ordinary care arises between a master and a volunteer because

The invitation-to-act element also explains why this Court did not consider the volunteer doctrine in the cases cited by the majority—*Leveque v Leveque*, 41 Mich App 127, 131; 199 NW2d 675 (1972), and *Doran v Combs*, 135 Mich App 492, 494-496; 354 NW2d 804 (1984).[3] In those cases, the master authorized or invited the injured person to perform services. As *Leveque* and *Doran* demonstrate, the volunteer doctrine generally does not apply in social settings, such as the rendering of neighborly assistance, because those cases typically involve a master who authorizes or invites the volunteer to act.

In the instant case, a question of fact existed whether Urbane requested or invited Hawkins to assist him in moving his personal possessions. If the volunteer doctrine does not apply, Urbane owed Hawkins a duty of ordinary care while backing up the truck. *McCullough v Ward Trucking Co*, 368 Mich 108; 117 NW2d 167 (1962); *Hopkins v Lake*, 348 Mich 382, 389, 398; 83 NW2d 262 (1957); *Jenkins v Bentley*, 277 Mich 81, 84; 268 NW 819 (1936). Accordingly, the trial court erred in granting summary disposition for Urbane, because a question of fact existed whether the volunteer doctrine applies in this case.

---

the master never agreed to enter into something akin to an employment relationship with the volunteer, *i.e.*, the master did not invite the volunteer to act. When the master invites the volunteer to act, whether gratuitously or not, application of the volunteer doctrine would not further this underlying rationale.

[3] In another case cited by the majority, *White v Badalamenti*, 200 Mich App 434; 505 NW2d 8 (1993), the master sued the volunteer for injuries sustained when she slipped and fell while walking on the volunteer's sidewalk. Thus, the volunteer doctrine did not even arguably apply because the case did not involve the duty owed by a master to a volunteer.