**MIDLAND CONST. CO., Inc.**

v.

**UNITED STATES CAS. CO.**
No. 4854.

United States Court of Appeals
Tenth Circuit.

Aug. 3, 1954.

J. Wirth Sargent, Wichita, Kan. (W. D. Jochems and E. A. Blaes, Wichita, Kan., on the brief), for appellant.

Robert H. Nelson, Wichita, Kan. (W. A. Kahrs, Clarence N. Holeman and Wilbur D. Geeding, Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by the United States Casualty Company[1] against Howse Company, Incorporated,[2] Midland Construction Company, Incorporated,[3] Charles E. Mahaney Roofing Company, Incorporated,[4] and Hartford Accident and Indemnity Company, a corporation, for a declaratory judgment to have determined its liability under its policy of insurance issued to Midland to defend an action instituted by Howse against Midland in a state court for damages and to discharge any judgment obtained therein against Midland. The

1. Herein called the Casualty Company.

2. Herein called Howse.

3. Herein called Midland.

4. Herein called Mahaney.

**666**

case was tried upon an agreed statement of fact and the testimony of one witness. The trial court entered judgment for the casualty company, finding that under the terms of its policy it was not required to defend the state court action or discharge any judgment obtained therein against Midland.

There is no disputed issue of fact in the case. Briefly, the facts are these. Midland is engaged in house construction and repair work. The casualty company had issued its policy of insurance to Midland, wherein so far as material it agreed to "pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident * * *." The contract also required the casualty company to "defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; * * *."

Howse owned a retail furniture business at 425 East Douglas in Wichita, Kansas. On August 7, 1952, it entered into an oral contract with Midland to do some repair work on the roof which required the opening of the roof. Midland's contract did not require it to close the opening. At the same time Howse entered into a separate oral contract with Mahaney to close the opening in the roof and seal it, when Midland had completed its work. Representatives of Howse, Midland and Mahaney met the day before the work was to begin and agreed that Midland was to call Mahaney before Midland had fully completed its work, in order that Mahaney's employees could prepare to close the opening when Midland's work was finished. The work was started by Midland on August 7, 1952, and about 1:00 p. m. on that day Midland's representative called Mahaney's employees and informed them that Midland would be through with its

work by 2:30 or 3:00 p. m. and requested Mahaney to come to the building and close the hole in the roof. At about 2:15 or 2:20 p. m. Healy, Midland's representative, went over to Mahaney's crew, which was working near by, and told them they should come to the Howse building and complete the work. Thereafter, Healy made a second trip to Mahaney's men and told them what would happen if they did not come over and close the opening. Apparently rain was in the offing at that time. Mahaney's men did not come until about 3:00 p. m., at which time it had been raining about ten minutes. It took Mahaney's men about five or ten minutes to close the opening after they got there, but in the meantime water had run into the building through the opening with resulting damage to the stock of merchandise therein.

Whether Midland was negligent in failing to close the opening itself, although that was not a part of its contract, and assuming that it was prepared to do so, when it saw that Mahaney's men were not coming over to perform their contract before the rain might begin, and whether such negligence, if any, subjected it to damage proximately flowing therefrom is not in the case, because the policy in question, and of which plaintiff sought a construction, subjected the casualty company to liability only for loss from accident. Indeed appellant's counsel at the oral argument with commendable candor conceded that unless the rain was an accident, as that term is used in such policies, there was no liability against the casualty company.

The meaning of the word "accident" cannot be defined with pinpoint accuracy or definiteness. We sometimes speak of an event which is the usual, natural, and expected result of an act as an accident. But in legal parlance an accident under the terms of an insurance policy, such as we have here, is variously defined as an unusual and unexpected event, happening without negli-

gence;[5] an undesigned, sudden, and unexpected event;[6] an undesigned, sudden, and unexpected event; chance or contingency; happening by chance or unexpectedly; an event from an unknown cause or an unexpected event from a known cause.[7] It may be that an unprecedented, torrential downpour of rain may under certain conditions be considered an accident, but afternoon showers —and this seems to have been an ordinary rain—are not unusual or unexpected. Common experience teaches that they happen frequently and are of common occurrence. A farmer may go forth in the morning, with not a cloud in the sky, to cut his alfalfa and yet have rain fall before evening. This is of such common occurrence that its happening cannot be said to be unexpected, unusual, or unanticipated, or beyond the ordinary experience of man.

Appellant places strong reliance upon Rex Roofing Company v. Lumber Mutual Casualty Insurance Company, 280 App. Div. 665, 116 N.Y.S.2d 876, in which it was held that a winter snow falling on a roof and turning to rain, which leaked into the building, was an accident. Without analyzing that case in detail, it is sufficient to say that we are not persuaded thereby that an ordinary afternoon shower is an accident, within the meaning of an insurance policy, such as we have here.

Although the policy required the casualty company to defend suits brought against the insured, even if such suit is groundless, false or fraudulent, it is the law that where the complaint fails to allege facts which, if established, create liability within the policy, no duty rests upon the insurance company to defend the action or pay a judgment obtained therein.[8] This case was tried on an agreed statement of fact and since the agreed statement of fact clearly established that there was no liability under the policy because no accident occurred the company was under no duty to defend the action.

Affirmed.

---

5. Beaumont, S. L. & W. Ry. Co. v. Schmidt, 123 Tex. 580, 72 S.W.2d 899.

6. Neale Const. Co. v. United States Fidelity & Guaranty Co., 10 Cir., 199 F.2d 591.

7. Lickleider v. Iowa State Traveling Men's Ass'n, 184 Iowa 423, 166 N.W. 363, 168 N.W. 884, 3 A.L.R. 1295.

8. Neale Const. Co. v. United States Fidelity & Guaranty Co., 10 Cir., 199 F.2d 591.