**ALBUQUERQUE GRAVEL PRODUCTS COMPANY, no stockholders' liability, a New Mexico corporation, Appellant,**

v.

**AMERICAN EMPLOYERS INSURANCE COMPANY, a corporation, Appellee.**

No. 6299.

United States Court of Appeals
Tenth Circuit.

Sept. 3, 1960.

Robert W. Botts (of Botts, Botts & Mauney), Albuquerque, N. M. (Iden & Johnson, Albuquerque, N. M., on the brief) for appellant.

Charles B. Larrabee, Albuquerque, N. M. (Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., on the brief), for appellee.

Before BRATTON, PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

The American Employers Insurance Company issued to plaintiff, Albuquerque Gravel Products Company, an insurance policy in which it agreed:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Actions were brought against the insured in the New Mexico State courts by various persons, alleging that damages had resulted from insured's negligent construction of a loading ramp across the natural water course of Hahn arroyo in northeastern Albuquerque, New Mexico, which diverted the flow of water onto adjoining premises, causing the damages complained of. The insurance company refused the insured's request to defend the actions upon the ground that the allegations of the various complaints did not bring the actions within the coverage of the policy.[1] In the defense and settlement of the actions the insured expended the sum of $12,786.76 and brought this action to recover that amount from the insurance company. It is alleged that during the months of July, August and September, 1955, floods in the area of plaintiffs' property resulted from rains of a sudden, unpredicted and unprecedented character and therefore constituted an accident within the meaning of the policy. The insurer denied that the rainfall was sudden, unpredicted and unprecedented or that the acts and circumstances out of which the claims against the insured arose were accidents. In a trial without a jury, the court found that the damages were not caused by an accident within the meaning of the policy provisions, and denied recovery.

The insured operated a ready mixed concrete business and its plant was located in the northeastern section of the City of Albuquerque, New Mexico. Adjoining the plant was an arroyo,[2] the natural channel of which carried into the Rio Grande River the surface waters which accumulated in the mountainous

1. The allegations of negligence in each of the complaints were substantially the same, and were as follows: "2. The plaintiffs are credibly informed and believe and therefore allege that the defendant built and used a loading ramp near the Atchison Topeka & Santa Fe Railway Company tracks and Pleasant Drive in or near Albuquerque, New Mexico. That such ramp was negligently built and maintained across a natural water course or arroyo, known as the Hahn arroyo. 3. The defendant negligently constructed and maintained said ramp in the bed of said Hahn arroyo, which said ramp dammed or retarded the natural flow of water in said arroyo and caused the water flowing down said arroyo to be diverted onto the lands of the plaintiffs. 4. Defendant knew or in the exercise of reasonable care should have known that the said ramp so constructed and maintained by it in said arroyo would prevent the flow of water in said arroyo from following a course down said arroyo, as it had done for many years prior to the construction of said ramp, but would back up and retard said water and cause the same to be diverted to and upon the plaintiffs' lands."

2. An "arroyo" as defined by Webster is: "A watercourse; a creek or brook; also

**220**

regions east of Albuquerque. In 1952 the insured constructed a truck ramp to facilitate the loading of material from trucks directly into railroad cars. It was approximately 50 feet wide, 200 feet long, and its highest elevation was 15 feet. The railroad tracks to which the ramp approached extended in a north-south direction and crossed the course of the arroyo at a point where it had widened into a flood plain. During the summer of 1955 there was an unusual amount of rainfall in the area which caused extensive flow of water down the arroyo, and at times created flood conditions.[3] On August 6th, by reason of heavy rains, the flow was described by some of the witnesses as "unprecedented" and there was extensive flooding in the vicinity of the railroad tracks and the ramp, causing damage to the property of the state court plaintiffs. The evidence is without conflict that the flood conditions which caused the damage claimed in the state court actions resulted from the heavy rains in the Hahn arroyo area.

 The terms of the insured's policy fix the right of recovery. Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 14 S.Ct. 379, 38 L.Ed. 231. It is a general rule that the duty of the insurer to defend an action against an insured is to be determined from the allegations of the complaint, Lee v. Aetna Casualty & Surety Co., 2 Cir., 178 F.2d 750; Annotation 51 A.L.R.2d 461, unless the insurer knows that the true, but unpleaded, factual basis for the claims brings them within the coverage of the policy.[4]

██ The term "accident" as used in insurance policies, is usually defined as "an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force * * *." Neale Construction Co. v. United States Fidelity & Guar. Co., 10 Cir., 199 F.2d 591, 593. In Midland Const. Co. v. United States Cas. Co., 10 Cir., 214 F.2d 665, 666, we said:

"The meaning of the word 'accident' cannot be defined with pinpoint accuracy or definiteness. We sometimes speak of an event which is the usual, natural, and expected result of an act as an accident. But in legal parlance an accident under the terms of an insurance policy, such as we have here, is variously defined as an unusual and unexpected event, happening without negligence; an undesigned, sudden and unexpected event; chance or contingency; happening by chance or unexpectedly; an event from an unknown cause or an unexpected event from a known cause. It may be that an unprecedented, torrential downpour of rain may under certain conditions be considered an accident, but afternoon showers—and this seems to have been an ordinary rain—are not unusual or unexpected. Common experience teaches that they happen frequently and are of common occurrence. A farmer may go forth in the morning, with not a cloud in the sky, to cut his alfalfa and yet have rain fall before evening. This is of such common occurrence that its happening cannot be said to be unexpected, unusual, or unanticipated, or beyond the ordinary experience of man."

See also Hutchinson Water Co. v. United States Fidelity & Guar. Co., 10 Cir., 250 F.2d 892; United States Fidelity & Guar. Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754; Webb v. New Mexico Publish-

---

a small, often dry, gully or channel carved by water."

3. One witness testified that the general area was flooded eight or ten times during the summer of 1955.

4. In Hardware Mutual Casualty Co. v. Hildebrant, 10 Cir., 119 F.2d 291, this rule was recognized and it was held that when the insurer knew of actual facts which would bring a claim within the coverage of an insurance policy, it was required to defend, even though the allegations of the complaint disclosed no basis for coverage.

ing Co., 47 N.M. 279, 141 P.2d 333, 148 A.L.R. 1002; Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342.

■ The evidence discloses that during any summer season the arroyos and canyons adjacent to the mountains east of Albuquerque are subject to flooding conditions of varying degrees of volume, intensity and velocity. The district court said: "It is well known that what may be a dry arroyo in the morning may be a raging torrent in the afternoon of the same day." It was found that the flooding described in the complaints was not "unprecedented, unpredictable or unforeseeable, or beyond the ordinary experience of man," and "persons resident or doing business within the vicinity of the arroyos should anticipate that the floods will occur and that they may diminish or increase in volume and intensity, depending only upon the uncertain vagaries of nature."[5] A finding of the court on fact questions is conclusive unless from a consideration of the record as a whole, it is shown to be clearly erroneous. Rule 52(a), F.R.Civ.P., 28 U.S.C.A.; International Boxing Club v. United States, 358 U.S. 242, 79 S.Ct. 245, 3 L.Ed.2d 270.

■ Clearly the gravaman of the state court action was the insured's negligence in constructing and maintaining the loading ramp across the arroyo which retarded and diverted the natural flow of water. We said in Neale Construction Co. v. United States Fidelity & Guar. Co., supra, 199 F.2d at page 593,—"The natural and ordinary consequences of a negligent act do not constitute an accident." As we pointed out in Hutchinson Water Co. v. United States Fidelity & Guar. Co.,[6] supra [250 F.2d 894], if this rule were followed to its logical conclusion in cases such as we have here, "the insurer would be free of coverage and the policy would be rendered meaningless." We are satisfied that the rule of the Neale Construction Company and Midland Construction Company cases was not intended to bring about this unhappy result. If, however, we do not rule out negligence as a possible basis of an accidental cause or result, negligence cannot be held to be synonymous with accident. If the results are the normal consequences of a negligent act, it is not accidental.

■ The evidence establishes without conflict that throughout the past generations floods of varying degrees have occurred during almost every summer in the usually dry arroyos east of Albuquerque. Although the rains were heavier and more frequent than usual during the summer of 1955, and the flooding was more extensive, we cannot say as a matter of law that the floods were accidental rather than the normal consequence of heavy rains which were foreseeable by a prudent person. Consequently, assuming negligence in the construction of the ramp, the results of the floods were not accidental. C. Y. Thomason Co. v. Lumbermans Mutual Casualty Co., 4 Cir., 183 F.2d 729; United States Fidelity & Guar. Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754.

Affirmed.

5. The court also found: "The floods in question were the result of an Act or Acts of God and the property to the west of the dirt ramp and tracks would have been flooded to the same extent as they were flooded regardless of the existence of the ramp."

6. In the Hutchinson Water Company case, we said:
"Apparently we did not contemplate whither this logic would lead us. For, if the policy did not cover the loss because the natural and probable consequences of the negligent act did not constitute an accident, then by the same logic, there would be no liability where the damage was the unexpected, hence unforeseen result of the negligent act. In the first instance, the damage would be foreseeable and therefore not accidental; in the latter instance, the damage would not be foreseeable and hence no liability upon the insured for his negligent acts. In either instance, the insurer would be free of coverage and the policy would be rendered meaningless."