**BUNDY TUBING COMPANY, a Michigan corporation, Plaintiff-Appellant,**

v.

**ROYAL INDEMNITY COMPANY, a New York corporation, Defendant-Appellee.**

**No. 14490.**

United States Court of Appeals
Sixth Circuit.

Jan. 24, 1962.

As Amended March 5, 1962.

Alfred E. Lindbloom, Beaumont, Smith & Harris, Detroit, Mich., for plaintiff-appellant.

Robert E. Plunkett, Ward, Plunkett & Cooney, Detroit, Mich., for defendant-appellee.

Before MILLER, Chief Judge, and WEICK and O'SULLIVAN, Circuit Judges.

WEICK, Circuit Judge.

Bundy Tubing Company was the manufacturer of small thin walled steel tubing used by building contractors and plumbers as material for radiant heating. The tubing was to be installed in concrete floors of basementless houses or buildings. Hot water from the boiler was carried through the tubing in the floors thereby heating the buildings. Royal Indemnity Company had issued to Bundy in Detroit, Michigan two policies of liability insurance which included "Products Hazard" coverage.

Three lawsuits were filed against Bundy in California and five in Michigan

seeking recovery for damages to property sustained by reason of the tubing, installed as part of heating systems, being defective. The suits alleged negligence in the manufacture of the tubing, or breach of warranty, or both, as a result of which the tubing failed and leaked. Royal defended the California cases but refused to defend the Michigan lawsuits. In one of the California cases, namely, the Coast Ventilating and Heating Company case, a judgment was recovered against Bundy in the amount of $8,865.-41 which was for the full amount claimed.

Bundy paid $5,250 in settlement of the other two California cases, on recommendation of Royal. In one of them Royal contributed $875 toward the settlement.

Bundy successfully defended two of the Michigan cases as a result of which the third case was dismissed with prejudice. Bundy paid $1,250 in settlement of the remaining two Michigan cases.

Bundy sued Royal in the District Court on the policies of liability insurance to recover the amounts paid out in satisfaction of the judgment, settlements and the costs and expenses of defending the Michigan cases.

The two policies of liability insurance contained identical provisions in all matters material to the case except as to the periods of coverage.

The insuring clauses of the policies provided:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

"Products Hazard. The term 'product hazard' means

"(1) the handling or use of, the existence of any condition in or a warranty of goods or products manufactured, * * * by the named insured, * * * if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured or on premises for which the classification stated in division (a) of the declarations or in the company's manual excludes any part of the foregoing;"

The policies provided for defense of lawsuits as follows:

"As respects the insurance afforded by the other terms of this policy the company shall: (a) defend any suit against the assured alleging such injury * * * and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

The exclusion clause was as follows:

"This policy does not apply: * * (d) Under Coverage B, to injury to or destruction of * * * (3) any goods or products manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises:"

The District Judge adopted findings of fact and conclusions of law. He held that since each of the lawsuits against Bundy involved claims for breach of express or implied warranty or of negligence, the damages were not caused by accident and hence were not covered by the liability policies. He further held that Royal owed no duty to defend Bundy in the Michigan cases and rendered judgment of no cause of action except as to an item of travelling expense for witnesses which Royal had agreed to pay. The District Judge relied on Neale Construction Co. v. United States Fidelity & Guaranty Co., 199 F.2d 591 (C.A.10) and Midland Construction Co. v. United States Casualty Co., 214 F.2d 665 (C.A. 10). In this Court, Royal further claimed that there was no duty to de-

fend the Michigan cases on the ground that the exclusion clause of the policy excluded coverage.

In correspondence with Bundy, Royal conceded that it was liable for damage to household furnishings caused by the leakage of water from the defective tubing and it offered to pay for such damage. The principal damage claimed in the cases, however, was for the cost of removal of the concrete flooring in which the defective tubing had been imbedded and the laying of new concrete in which to place new tubing. As to this Royal contended that the old concrete had not been damaged in any accident and that in any event liability was excluded under the exclusion clause.

In our opinion, property was damaged by the installation of defective tubing in a radiant heating system which caused the system to fail and become useless. A homeowner would never have such equipment installed if he knew that it would last only a very short time. A home with a heating system which did not function would certainly not be suitable for living quarters in the wintertime. The market for its sale would be seriously affected.

The failure of the tubing in the heating system in a relatively short time was unforeseen, unexpected and unintended. Damage to the property was therefore caused by accident.

In Hauenstein v. St. Paul Mercury Indemnity Co., 242 Minn. 354, 65 N.W. 2d 122, 126, the Supreme Court of Minnesota said:

"There is no doubt that the property damage to the building caused by the application of defective plaster was 'caused by accident' within the meaning of the insurance contract, since the damage was a completely unexpected and unintended result. Accident, as a source and cause of damage to property, within the meaning of an accident policy, is an unexpected unforeseen or undesigned happening or consequence from either a known or an unknown cause."

Hauenstein was distinguished by the Supreme Court of California in Volf v. Ocean Accident & Guaranty Corp., 50 Cal.2d 373, 325 P.2d 987 and followed by a divided court in Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co., 51 Cal.2d 558, 334 P.2d 881. In the latter case, recovery was allowed for the cost of removal of defective aluminum doors and the cost of installation of new doors.

The fact that the claims here involved breach of warranty or negligence did not remove them from the category of accident. Bundy would not be legally obligated to pay a claim arising out of an accident occurring without its negligence or breach of warranty. If the liability policy were construed so as to cover only accidents not involving breach of warranty or negligence, then no protection would be given to the insured. The insured would not need liability insurance which did not cover the only claims for which it could be held liable. The word "accident" is common in most liability policies and should not be construed in this type of case as not including claims involving negligence or breach of warranty. Diefenbach v. Great Atlantic & Pacific Tea Co., 280 Mich. 507, 273 N.W. 783; Pawlicki v. Hollenbeck, 250 Mich. 38, 229 N.W. 626; Hunt v. United States Accident Association, 146 Mich. 521, 109 N.W. 1042; New Amsterdam Casualty Co. v. Jones, 135 F.2d 191 (C.A.6).

The exclusion clause eliminated recovery for "any goods or products manufactured, sold, handled or distributed. * * *" Under this clause no recovery may be had for the value of the defective tubing or the cost of new tubing to replace it. The language "or work completed by or for the named insured * * *" has no application since Bundy did not install any tubing.

The exclusion clause was construed in the Hauenstein case where the court said:

"Altho there is no liability for damage to the plaster itself as a product handled and distributed by the plaintiff, the insurer is liable un-

der its insurance contract for accidental damage to property caused by the application of the defective plaster."

■ The complaints in the Michigan cases set forth claims of possible coverage by the insurance which required the insurer to defend at least until it could confine the claims to a recovery that the policy did not cover. Employers Mutual Liability Ins. Co. v. Hendrix, 199 F.2d 53, 41 A.L.R.2d 424 (C.A.4); Maryland Casualty Co. v. Pearson, 194 F.2d 284 (C.A.2); Lee v. Aetna Casualty & Surety Co., 178 F.2d 750 (C.A.2); City Poultry & Egg Co. v. Hawkeye Casualty Co., 297 Mich. 509, 298 N.W. 114.

The case of Duval v. Aetna Casualty & Surety Co., 304 Mich. 397, 8 N.W.2d 112, relied on by appellee, does not help it for there no liability attached because coverage of the claims was excluded by the exclusion clause.

The two cases decided by the Tenth Circuit Court, which were relied upon by the District Judge, do contain language which supports his holding. However, in a later decision by the same court in the case of Hutchinson Water Co. Inc. v. United States Fidelity & Guaranty Co., 250 F.2d 892 (C.A.10) some doubt was cast about the proposition that acts of negligence do not constitute an accident. In that case Judge Murrah, who wrote the opinion for the Court said:

"Apparently we did not contemplate whither this logic would lead us. For, if the policy did not cover the loss because the natural and probable consequences of the negligent act did not constitute an accident, then by the same logic, there would be no liability where the damage was the unexpected, hence unforeseen result of the negligent act. In the first instance, the damage would be foreseeable and therefore not accidental; in the latter instance, the damage would not be foreseeable and hence no liability upon the insured for his negligent

acts. In either instance, the insurer would be free of coverage and the policy would be rendered meaningless."

The District Court made no determination as to whether the items of damage included in the judgment and settlements were all for damages to property; whether the payments made by Bundy in settlement of the Michigan cases were voluntary; whether the costs and expenses of defending the Michigan cases were reasonable. These questions are open for determination. The value of the defective tubing or the cost of new tubing cannot be included as part of the damage. The cost of removing defective tubing and the cost of installing new tubing is recoverable.

The judgment of the District Court is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

O'SULLIVAN, Circuit Judge (dissenting).

I am unable to agree that the words, "damages because of injury to or destruction of property * * * *caused by accident*" should be held to encompass an insured manufacturer's liability for the cost of repair or replacement of its product which failed to function as expected or warranted. My opinion would be the same whether the liability cast upon the manufacturer was because of its negligence or its breach of warranty. Judge Weick's opinion ably reviews the cases that have considered this subject. With great respect for his reasoning and the authorities which support it, I find most acceptable the language of the dissenting opinion in the case of Geddes and Smith v. St. Paul Mercury Indemnity Company, 51 Cal.2d 558, 334 P.2d 881, wherein the dissenters (three of seven judges) said:

"Thus, the effect of a majority opinion is to convert a so-called public liability policy, limited to liability imposed for damages and 'caused by accident', into an agreement to indemnify the insured against liabil-

ity for the insured's failure to faithfully perform its contractual obligation regardless of the showing of an 'accident.'"

I agree with the majority opinion here that the consequence of negligence or breach of warranty can be accidental and, therefore, do not rely on Neale Construction Co. v. United States Fidelity & Guaranty, 199 F.2d 591 (C.A.10) to the extent that such decision bottoms its holding upon a contrary conclusion. However, there is a difference between negligence and the consequence of negligence. Negligence may cause an accident, but accident and negligence are not synonymous terms. Albuquerque Gravel Products Co. v. American Employers Insurance Co., 282 F.2d 218 (C.A.10, 1960).

The proofs in this case consisted principally of the pleadings in various cases where Bundy Tubing was charged with damages consisting (except as hereinafter noted) of the cost of replacing various radiant heating installations following deterioration of the tubing supplied by Bundy. The tubing corroded, became pitted and developed leaks. To the extent that water from such leaks damaged property such as rugs, drapes, etc., these damages were caused by accident. The appellee insurance company conceded coverage and paid for such damage. All but two of the suits against Bundy were brought by contractors who had installed its tubing and the damages sought consisted of such contractor's cost of replacing radiant heating installations. The other two were by homeowners who sued Bundy with others, seeking like damages. None of these pleadings charged facts descriptive of an accidental occurrence or described physical damage to any property other than to the tubing itself, except for the water damage to drapes, etc. The obligation of an insurer to defend an action against an insured is to be determined from the allegations of the complaint. Albuquerque Gravel Products v. American Employers Insurance Co., 282 F.2d 218, 220 (C.A.10, 1960); Lee v. Aetna Casualty & Surety Co., 178 F.2d 750 (C.A.2, 1949); Duval

v. Aetna Casualty & Surety Co., 304 Mich. 397, 401, 402, 8 N.W.2d 112.

In Womack v. Employers Mutual Liability Insurance Co., 233 Miss. 110, 101 So.2d 107, a garageman sought to recover from his insurer the cost of defending a suit brought against him by a vehicle owner for defective workmanship in repairing such motor vehicle. The damages sought were for the vehicle owner's cost of repairs made necessary by such defective workmanship. The garageman's insurance policy protected him against liability for injury "caused by accident." In denying coverage, the Mississippi court said:

"Many definitions of 'accident' are given in the books. Under none of them are we able to see that the work done by Womack (garageman) on Lotta's motor vehicle can be classed as an accident."

If a manufacturer installed a defective steering mechanism in an automobile, and as a consequence, the vehicle left the road and injured a person or property, it would be clear that such injury was caused "by accident." If, however, the owner of such motor vehicle, without any intervening accident, demanded and obtained replacement of the defective equipment, I would not think that it could be claimed that the manufacturer could recover, under such an accident policy as we are dealing with here, its costs for labor and material in making good to an owner for its defective installation. True, such motor vehicle with unworkable steering equipment is not as good as one with proper steering equipment, but I do not think that it could be claimed that such a vehicle had been damaged "by accident."

In one of the suits against Bundy, the complaint charged that the defective tubing "caused great damage to the home and contents." In its bill of particulars, there was an item identified as "decorations." This could represent damage caused by water. The proofs showed that Bundy settled this case for $500.00, so it may be that Royal was required to defend against such action. This cir-

cumstance was not called to the attention of the District Judge, nor discussed at the trial.

I would remand the cause to the district court to determine what recovery, if any, should be awarded to Bundy because of the last mentioned case (Pacific National Fire Insurance Company, subrogee v. Bundy Tubing Company et al.). In all other respects, I would affirm the district court.