**CALVERT INSURANCE COMPANY,**
**Plaintiff,**

v.

**HERBERT ROOFING AND INSULATION COMPANY, Brian L. Herbert, and Jane E. Herbert, Defendants.**

No. 91–CV–10031–BC.

United States District Court,
E.D. Michigan, N.D.

Dec. 1, 1992.

Michael E. Thoits, James D. Wilson, Plunkett & Cooney, Detroit, MI, for plaintiff.

John F. O'Grady, Saginaw, MI, for defendants.

OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CLELAND, District Judge.

This matter comes before the Court on the parties' cross motions for summary judgment. Both sides have submitted written briefs in support of their motions, and on October 22, 1992, the Court heard oral argument from counsel. Because the Court determines that the insurance policy at issue covers damage to property other than the Defendants' work product, Plaintiff's motion will be denied and Defendants' motion will be granted.

## BACKGROUND

This action arises out of Defendant Herbert Roofing and Insulation Company's (Herbert) installation of a roof at an elementary school in the Saginaw Township School District (the School District). Shortly after Herbert completed the project, the new roof began to leak. The water that made its way through the roof caused damage to the interior of the school building (e.g., ceiling tiles, light fixtures, lockers, flooring, etc.), the exterior of the building (e.g., walls and foundation), and to various articles of personal property of school district employees and students. The School District brought suit against Herbert in state court alleging breach of contract, negligence, and violation of state and federal consumer protection laws.

At the time of the leakage, a comprehensive general liability policy between Plaintiff, Calvert Insurance Company (Calvert), and Herbert was in full force and effect. The policy provided that Calvert would indemnify Herbert for any damages Herbert became obligated to pay because of "bodily injury" or "property damage" "to which this insurance applies." This policy also required Calvert "to defend any suit against the insured seeking damages on account of such bodily injury or property damage." After the School District filed suit against Herbert in state court, Calvert brought this declaratory judgment action against Herbert. Calvert seeks a declaration that the property damage at issue is not covered under the insurance policy and that it therefore owes no duty to defend or indemnify Herbert.

## DISCUSSION AND ANALYSIS

### I.

Plaintiff brings this action for a declaratory judgment pursuant to 28 U.S.C. § 2201. In deciding whether to exercise its power to grant declaratory relief, the Court must consider the following factors: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir.1990). Having considered the foregoing factors, the Court concludes that it is proper to grant declaratory relief in this case. Most importantly, the relevant facts are not in dispute, and thus the Court has a clear record upon which to decide the question of contractual interpretation that has been presented. In addition, Plaintiff is currently defending Herbert in the underlying state court action.

If the Court determines that the damage at issue is not covered by the insurance policy, Plaintiff need no longer conduct Herbert's defense. The Court believes it is in the best interest of both parties to obtain a timely declaration of their rights under the insurance policy so that the parties can conform their conduct in the underlying state court action accordingly.

## II.

■ The Court has jurisdiction over this action based on the diversity of citizenship between the parties. Under the rule established in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits. *Marrical v. Detroit News, Inc.*, 805 F.2d 169 (6th Cir.1986).

■ The parties agree that the provisions of the insurance policy govern the outcome of this lawsuit, and that the policy covers property damage which results from an "occurrence." The policy defines occurrence as follows:

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

From this definition, the Court gleans three elements that must be established in order to trigger coverage: (1) an accident, (2) resulting in bodily injury or property damage, (3) which is neither expected nor intended from the standpoint of the insured.

Relying primarily on *Hawkeye–Security Ins. Co. v. Vector Construction Co.*, 185 Mich.App. 369, 460 N.W.2d 329 (1990), Plaintiff argues that there was no accident in this case and thus no occurrence to trigger its obligations under the insurance policy. In *Vector*, the insured (Vector Construction) performed all concrete work involved in an improvement project at a wastewater treatment plant. When the owner of the plant discovered that the concrete Vector had used did not meet project specifications, Vector was forced to remove and repour some 13,000 yards of concrete.

Vector sought indemnity from its insurance carrier pursuant to the terms of a comprehensive liability policy substantially similar to the policy at issue in this action. The Michigan Court of Appeals determined that the insurer owed no duty to defend or indemnify Vector because "the defective workmanship of Vector, standing alone," was not the result of, nor did it constitute, an "occurrence" within the meaning of the insurance contract. *Id.* at 378, 379, 460 N.W.2d 329. Plaintiff argues that the holding in *Vector* requires the Court to deny coverage in this case because the damage at issue here was caused by Herbert's defective workmanship, and thus there is no "occurrence" within the meaning of the insurance policy.

Defendants acknowledge the holding in *Vector*, but rely on *Bundy Tubing Co. v. Royal Indem. Co.*, 298 F.2d 151 (6th Cir. 1962). In *Bundy*, the insured was the manufacturer of radiant heat tubing which was installed in the concrete floors of buildings. A defect in the tubing caused it to leak, which in turn caused damage to certain furnishings (rugs, drapes, etc.) inside the buildings. In order to replace the defective tubing, portions of the concrete floors had to be removed and repoured. The owners of several of the buildings brought suit against the insured alleging breach of warranty and negligence. The insurer agreed to indemnify only for the cost of replacing the various damaged furnishings, *id.* at 153, and the insured brought suit to recover for the other alleged damages, including the cost of removing and repouring the concrete floors. The Sixth Circuit held that the insurer was required to indemnify the insured for the cost of removing the defective tubing and the cost of installing new tubing (i.e., for the concrete work), but not for the cost of the new tubing itself. *Id.* at 154.

At first blush, the result in *Bundy* appears to be inconsistent with the result in *Vector*. Whereas the *Vector* court held there was no coverage for damage arising out of the insured's defective workmanship, in *Bundy* the Sixth Circuit held that the insurer was required to pay for damage

arising out of the insured's defective workmanship. In view of this apparent inconsistency, Plaintiff asserts that *Vector* "expressly discounted" the reasoning and result in *Bundy*, (Plaintiff's reply brief, p. 4).

Plaintiff's interpretation of the *Vector* case is erroneous. The *Vector* court acknowledged the Sixth Circuit's holding in *Bundy*, and rather than "discounting" that holding, distinguished the facts of *Bundy* from the facts of the case before it:

> *Bundy* stands for nothing more than the proposition that an insurer must defend and may become obligated to indemnify an insured under a general liability policy of insurance that covers losses caused by "accidents" *where the insured's faulty work product damages property of others.* In the instant case [the insured] seeks what amounts to recovery for damage done to its own work product, and not damage done to the property of someone other than the insured.

*Vector, supra* at 377 (emphasis added).

The holdings in *Bundy* and *Vector* can be reconciled by focusing on the property damage at issue in each case. In *Vector*, the insured's defective workmanship resulted only in damage to the insured's work product. In *Bundy*, the insured's defective workmanship resulted in damage to the property of others. Taken together, these cases stand for the proposition that when an insured's defective workmanship results in damage to the property of others, an "accident" exists within the meaning of the standard comprehensive liability policy. This construction is supported by the definition of "accident" adopted by the Michigan Supreme Court:

> An accident ... is anything that begins to be, that happens, or that is a result which is *not anticipated and is unforeseen and unexpected by the person in-jured or affected thereby*—that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.

*Guerdon Industries, Inc. v. Fidelity & Casualty Co.,* 371 Mich. 12, 18–19, 123 N.W.2d 143 (1963) (emphasis added), *quoted in Vector, supra* at 374. As the first part of this definition makes clear, whether something is an "accident" within the meaning of the standard liability policy depends in part upon whether the *resulting damage* is unforeseen and unexpected *by the person injured or affected thereby.* When the damage caused by an insured's defective workmanship is unforeseen and unexpected by the person injured thereby, the damage is accidental. Thus the property owners in *Bundy* whose homes or offices were damaged by water leaking from the insured's defective tubing were damaged by accident. However, when the damage arising out of the insured's defective workmanship is confined to the insured's own work product, the insured is the injured party, and the damage cannot be viewed as accidental within the meaning of the standard liability policy.[1]

The facts of the instant case are not in dispute. The new roof began to leak shortly after Herbert completed the installation and the leaking water caused damage to the interior of the building, the exterior of the building, and to the personal property of students and school district employees. The School District has filed an action against Herbert in state court which sounds in both negligence and contract and

---

**1.** This conclusion becomes more obvious when one considers the nature of the liability that arises when defective workmanship causes damage only to the insured's own work product. In such a case, the insured is liable only for breach of contract and only to the party for whom the insured agreed to perform the work. Liability insurance is not intended to protect the insured against contractual liability. "The coverage [provided under a comprehensive liability policy] is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." Henderson, "Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know," 50 Neb.L.Rev. 415, 441 (1971), *quoted in Weedo v. Stone–E–Brick, Inc.,* 81 N.J. 233, 405 A.2d 788 (1978).

seeks recovery for the cost of replacing the roof and for the damage to the school building and its contents. On these facts, the Court holds that Plaintiff is obligated, under the terms of the insurance policy, to defend Herbert against the negligence claim in the underlying state action and to indemnify Herbert for any damages to the school building or its contents for which Herbert is held liable. Plaintiff is under no duty, however, to indemnify Herbert for the cost of removing the defective roof and/or installing a new roof.

## CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is HEREBY DENIED and Defendants' Motion for Summary Judgment is HEREBY GRANTED.

Defendants shall submit a proposed judgment in accordance with Rule 58.1(c) of the Local Rules of the United States District Court for the Eastern District of Michigan.

IT IS SO ORDERED.