*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SKANSKA USA BUILDING INC.,

    Plaintiff-Appellee,

v

M.A.P. MECHANICAL CONTRACTORS, INC.,

    Defendant,

and

AMERISURE INSURANCE COMPANY and
AMERISURE MUTUAL INSURANCE
COMPANY,

    Defendant-Appellant.

UNPUBLISHED
March 19, 2019

No. 340871
Midland Circuit Court
LC No. 13-009864-CK

---

SKANSKA USA BUILDING INC.,

    Plaintiff-Appellant,

v

M.A.P. MECHANICAL CONTRACTORS, INC.,
AMERISURE INSURANCE COMPANY, and
AMERISURE MUTUAL INSURANCE
COMPANY,

    Defendants-Appellees.

No. 341589
Midland Circuit Court
LC No. 13-009864-CK

---

Before: SAWYER, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

-1-

This is a commercial liability insurance coverage dispute, arising from the faulty installation of parts in the steam heat system of a hospital construction project. The resulting damage required extensive repairs, in excess of $1 million. In Docket No. 340871, the insurance carrier, defendant-appellant, Amerisure Insurance Company ("Amerisure"), appeals by leave granted an order denying its motion for summary disposition upon finding there were factual issues as to whether the faulty installation caused an "occurrence" within the meaning of the insurance policy. In Docket No. 341589, the construction manager, plaintiff-appellant Skanska USA Building Inc.'s ("plaintiff"), appeals by leave granted from the same order. Both parties on appeal assert that this Court can resolve the coverage issue as a matter of law. The matters have been consolidated for appeal.[1] We conclude that the trial court erred when it failed to grant Amerisure summary disposition. Consequently, we reverse the trial court's order.

## I. BASIC FACTS

Most of the facts are undisputed. Starting in 2008, plaintiff was the construction manager on a renovation project for Mid-Michigan Medical Center in Midland ("Medical Center" or "MMMC"). Plaintiff subcontracted the heating and cooling portion of the project to defendant M.A.P. Mechanical Contractors ("MAP"). MAP obtained a commercial general liability insurance policy ("CGL policy") from Amerisure. Plaintiff and the Medical Center are named as additional insureds on the CGL policy.

In 2009, MAP installed a steam boiler and related piping for the Medical Center's heating system. MAP's installation included several expansion joints, which are designed to accommodate the expansion of the piping caused by the flowing steam. In 2010 the heating system became fully activated, but it did not function properly. Sometime between late December 2011 and late February 2012, plaintiff determined that MAP had installed some of the expansion joints backward. Significant damage to concrete, steel, and the heating system had occurred. Plaintiff notified MAP of the backward joints.

On March 2, 2012, MAP sent a notice of claim to Amerisure. The notice identified the date of occurrence as December 21, 2011, and stated that the "claimant" discovered the backward installation just before Christmas 2011. The notice further indicated that the claimant had not reported the problem to MAP until March 2012.

On March 28, 2012, the Medical Center sent a demand letter to plaintiff, asserting that plaintiff must pay for all costs of repair and replacement. The following day, March 29, plaintiff sent a demand letter to MAP, asserting that MAP was responsible for all costs of repair and replacement. Plaintiff proceeded to perform the work of repairing and replacing the damaged property. According to plaintiff, the cost of the repair and replacement work was approximately

---

[1] *Skanska USA Building Inc v MAP Mechanical Contractors Inc*, unpublished order of the Court of Appeals, issued April 10, 2018 (Docket No. 340871); *Skanska USA Building Inc v MAP Mechanical Contractors Inc*, unpublished order of the Court of Appeals, issued April 10, 2018 (Docket No. 341589).

$1.4 million. Plaintiff submitted a claim to Amerisure on June 6, 2012, seeking coverage as an insured. Plaintiff's claim was denied.

In June 2013, plaintiff filed a complaint against MAP and Amerisure seeking payment for the cost of the repair and replacement work. Before the parties had completed discovery, Amerisure moved for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim) and 2.116(C)(10) (no genuine factual issue). Amerisure asserted several grounds for summary disposition, including: (1) MAP's defective construction was not a covered occurrence within the CGL policy; (2) plaintiff failed to provide proper notice of a claim; (3) plaintiff entered into a settlement without Amerisure's consent; and (4) several exclusions barred coverage.

The trial court denied Amerisure's motion in a 12-page opinion and order issued on November 18, 2014. The trial court first looked to the policy to determine whether installation of the backward expansion joints was an "occurrence." The relevant provision provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . ."property damage" to which this insurance applies . . .
>
> b. This insurance applies to . . . "property damage" only if:
>
> (1) The . . . "property damage" is caused by an "occurrence" . . .

The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." However, the policy did not define the word "accident." The trial court looked to *Hawkeye-Security Ins Co v Vector Construction Co*, 185 Mich App 369; 460 NW2d 329 (1990), which defined "accident" as "anything that begins to be, that happens, or that is not anticipated . . . takes place without the insured's foresight or expectation and without design or intentional causation on his part." However, citing *Hawkeye*, the trial court noted that "[d]efective workmanship, standing alone, is not an occurrence within the meaning of a general liability insurance contract, an occurrence exists where the insured's faulty work product damages the property of another." The trial court concluded:

> Here, the injured parties and people affected by MAP's negligence did not anticipate, foresee, or expect backward expansion joints or property damage to the entire length of the underground steam and condensate lines. Michigan courts have consistently focused on the particular property damaged to determine whether an "occurrence" has happened under a general liability policy and whether coverage exists. . . . No one has suggested MAP purposefully installed the expansion joints backward. All the parties agree the negligent installation was an unforeseen occurrence and not anticipated by any of the parties to the construction project. Under the plain language of the policy, this unforeseen incident means an "occurrence" may have happened which triggers Amerisure's duty of coverage under the insurance policy. Whether an "accident" has occurred is evaluated "from the standpoint of the insured, not the injured party." *Frankenmuth Mutual Ins Co v Masters*, 460 Mich 105, 114; 595 NW2d 832 (1999).

Damage arising out of the insured's defective workmanship confined to the insured's own work product, i.e. the insured is the injured party, cannot be viewed as accidental within the meaning of the general liability policy. Skanska contracted to install piping and expansion joints as part of their scope of work but the damage caused by defective installation of the expansions joints [sic] by MAP may have gone beyond the scope of the work required by the contract between Skanska and MMMC thereby leading to coverage despite the defective or negligent workmanship, the parties disagree on this allegation which leads the Court to believe a question of fact is in dispute and thereby precludes entry of summary disposition.

Plaintiff had urged the trial court to follow *Amerisure Mutual Ins Co v Hall Steel Co*, unpublished opinion per curiam of the Court of Appeals, issued December 10, 2009 (Docket No. 286677), wherein the Court of Appeals concluded that supplying defective steel was the type of unanticipated event under the definition in *Hawkeye*. However, the trial court simply noted that "a question of material fact exists as to the extent of the property affected by the defective workmanship of MAP and whether it extends beyond the scope of work to be performed by Plaintiff for the contract with MMMC. The resolution of this question of fact requires the matter be submitted to the trier of fact, so summary disposition is not appropriate at this time."

Following the trial court's November 18, 2014, opinion and order, Amerisure moved for reconsideration. The trial court denied Amerisure's motion in an April 6, 2015, opinion and order. The trial court clarified two points from its prior opinion denying summary disposition:

Amerisure's first claim of palpable error relates to the claim of the repair and replacement work being within the scope of the original project and thereby not an occurrence for purposes of coverage. The Court ruled the work within the scope of the original project with MAP Mechanical Contractors, Inc. was not subject to coverage; however, a question of fact existed as to the extent of the scope of the property damage was beyond the original contract thereby potentially subject to coverage. It appears this is consistent with the opinion issued by this Court on summary disposition motion so reconsideration is not necessary; however, the Court will acknowledge there is a partial grant of summary disposition under the Court's prior decision.

The second issue in the Motion for Reconsideration relates to the application of the "no action" clause of the insurance policy. Once again the issue was addressed by the Court in the original decision. The Court determined a question of fact existed as to the conduct of Amerisure which could give rise to a claim of waiver of these contractual provisions and must be decided by the trier of fact. The passages from case law cited by Amerisure acknowledge the potential for these provisions to be inapplicable where the insurance company waived their application. The Court does not see any basis for relief from the prior decision as it properly analyzed the applicable legal issues and reconsideration is thereby denied for this claim as well.

After the trial court denied summary disposition, Amerisure took the deposition of plaintiff's project manager, Colin Martin. Martin described plaintiff's repair and replacement work as "warranty work." He indicated that most of the warranty work was within the scope of the construction and renovation project, but that the work may have included repairs on electrical conduit and irrigation piping that had not been part of the original project.

Amerisure then filed a renewed summary disposition motion pursuant to MCR 2.116(C)(10), reiterating the arguments in its original motion and adding factual support from Martin's deposition testimony and exhibits. In the renewed motion, Amerisure contended that Martin's testimony established that all of plaintiff's repair and replacement work—i.e., the warranty work—was within the scope of plaintiff's original construction and renovation project. Amerisure pointed out that plaintiff had failed to come forward with evidence to establish that any of the warranty work, including repair on the conduit or irrigation system, was actually outside the scope of the original construction and renovation project.

In response to Amerisure's renewed motion, plaintiff sought summary disposition on Amerisure's liability to plaintiff pursuant to MCR 2.116(I)(2) (opposing party entitled to summary disposition). Plaintiff argued that *Hawkeye* did not control the CGL policy in this case. Plaintiff explained that the *Hawkeye* decision interpreted a prior version of the standard CGL policy issued by the Insurance Services Office ("ISO"), who drafted and published the standard contract. The new commercial general liability policy, which applies to this particular case, provides coverage for defective construction claims as long as the defective work was performed by a subcontractor as opposed to the policyholder. Plaintiff further argued that the plain terms of the current coverage provision demonstrated that MAP's backward installation of the expansion joints was an accident, which constituted an occurrence covered by the policy.

In October 2017, the trial court issued an opinion and order again denying summary disposition. The court reiterated its determination that "[d]efective workmanship, standing alone, is not an occurrence within the meaning of a general liability insurance contract." The trial court "clarified" that it "did not determine whether an accident occurred, and did not make a finding as to whether or not there was an 'occurrence.' Rather, in in its November 2014 Order, this Court held an occurrence *may* have happened, and found the damage caused by M.A.P.'s defective installation of the expansion joints may have gone beyond the scope of the work required by the contract between Plaintiff and MMMC." The trial court acknowledged plaintiff's argument that the trial court should not rely on *Hawkeye* because *Hawkeye* interpreted the older comprehensive general liability policy as opposed to the new commercial general liability policy but that "[t]his Court is bound by, and must follow, the precedent set by *Hawkeye*, because it has not been overruled or otherwise found to be inaccurate case law interpreting the insurance provision presented in this case." The trial court concluded:

> There is no indication MAP purposefully installed the expansion joints backwards. The parties affected by MAP's negligence did not anticipate, foresee, or expect backward expansion joints or property damage to the entire length of the underground steam and condensate lines. This Court finds, as it did in its November 2014 Opinion, the plain language of the policy means an "occurrence" *may* have happened, which would then trigger Amerisure's duty of coverage. No further-evidence has been presented to resolve this issue, as this Court cannot find

that Mr. Martin's deposition testimony conclusively establishes whether the warranty work was part of the original project, nor whether an occurrence occurred, and reasonable minds can differ on the issue. Therefore, a question of fact still remains for the jury and Summary Disposition is not appropriate.

The trial court denied plaintiff's motion for reconsideration. Both parties appeal by leave granted, arguing that the trial court should have resolved the issue as a matter of law in their respective favors.

## II. ANALYSIS

The dispositive issue in this case is whether there was an "occurrence" triggering coverage. We conclude that the trial court erred when it failed to grant Amerisure summary disposition where there was no genuine issue of material fact that plaintiff sought coverage for replacement of its own work product.

The interpretation and application of an insurance policy is a question of law reviewed de novo. *Hunt v Drielick,* 496 Mich 366, 372; 852 NW2d 562 (2014). This Court also reviews de novo a trial court's summary disposition ruling. *Batton-Jajuga v Farm Bureau Gen Ins Co of Michigan*, 322 Mich App 422, 428; 913 NW2d 351(2017). The Court enforces insurance policy provisions according to the plain terms of the policy. *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 62–63; 903 NW2d 197 (2017).

In both of the summary disposition rulings in this case, the trial court determined that the coverage provision is controlled by this Court's decision in *Hawkeye*. In *Hawkeye*, a construction contractor demanded CGL coverage for the cost of removing and re-pouring concrete. *Hawkeye*, 185 Mich App at 371. The original concrete, supplied to a subcontractor, failed to meet the project specifications, necessitating removal and re-pouring of extensive concrete structures. *Id*. The trial court granted summary disposition in favor of the insurance carrier, and this Court affirmed. *Id*. at 377. At issue was whether there was an "occurrence" triggering coverage. In contrast to the definition of "occurrence" as found in the policy in the present case, "occurrence" in the *Hawkeye* case was defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured*[.]" *Id*. at 373 (emphasis added). Because the policy did not define "accident," this Court looked to a previously–adopted definition of "accident," which was:

> Anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby—that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected. [*Id*. 373, quoting *Guerdon Industries, Inc v Fidelity & Cas Co of New York,* 371 Mich 12, 18–19; 123 NW2d 143 (1963), quoting 10 Couch on Insurance (2d ed), ¶ 41:6, p 27.]

-6-

At issue in *Hawkeye* – as here – was whether the contractor's defective workmanship constituted an accident and was, therefore, an occurrence within the meaning of the policy. *Hawkeye*, 185 Mich App at 374.

This Court rejected the contractor's reliance on *Bundy Tubing Co v Royal Indemnity Co,* 298 F 2d 151 (CA 6, 1962). In *Bundy*, the insured was a manufacturer of tubing that was used in several homes for radiant heating systems. The tubes ultimately failed and needed to be replaced. The Sixth Circuit concluded that an "accident" had occurred because homeowners would not have expected that the system would fail in such a short time. In effect, the failure of the tubing was unforeseen, unexpected, and unintended. *Hawkeye*, 185 Mich App at 375-376. The *Hawkeye* Court determined that *Bundy* "stood for nothing more than the proposition that an insurer must defend and may become obligated to indemnify an insured under a general liability policy of insurance that covers losses caused by 'accidents' where the insured's faulty work product *damages the property of others*. In the instant case [the insured] seeks what amounts to recovery for damages done to *its own work product,* and not damage done to the property of someone other than the insured." *Hawkeye*, 185 Mich App at 377 (emphasis added).

This Court believed that *McAllister v Peerless Ins Co,* 124 NH 676, 474 A 2d 1033 (1984) was more instructive. *Hawkeye*, 185 Mich App at 377. In *McAllister*, the insured operated a landscaping and excavation business and was hired to construct a leach field. The homeowner sued for breach of contract, alleging faulty workmanship and requesting damages to pay for corrective work. In that case, the insured sought coverage for the correction of faulty original work, not for damage to other property. *Id*. at 377. The New Hampshire Supreme Court held that there was no coverage under the policy because there was no occurrence, explaining:

> "The fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship . . . Despite proper deference, then, to the reasonable expectations of the policyholder, . . .we are unable to find in the quoted policy language a reasonable basis to expect coverage for defective workmanship." [*Hawkeye*, 185 Mich App at 378, quoting *McAllister*, 124 NH at 680.]

In *Hawkeye*, this Court observed that the insured sought coverage for damages to its own work product, not damage to another's property. *Id*. It concluded:

> We agree with both the reasoning and the conclusion as expressed by the *McAllister* court. Accordingly, we hold that the defective workmanship of [the insured], standing alone, was not the result of an occurrence within the meaning of the insurance contract. Summary disposition was properly granted on this issue. [*Hawkeye*, 185 Mich App at 378.]

Plaintiff argues that the trial court erred in determining that *Hawkeye* controls the coverage provision in this case. Plaintiff points out that CGL policies generally follow standardized formats created by the national ISO, and that the *Hawkeye* case interpreted a prior

version of the CGL form.[2]  Again, the old standardized policy defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured*."  The policy at issue in this case does not include the italicized passage.  Plaintiff suggests that this Court follow courts from other jurisdictions, which have applied the newer language to include accidents that are the result of an insured's own (or subcontractor's) work product.

We are unpersuaded by plaintiff's citations to other jurisdictions, finding no compelling reason to re-visit settled Michigan case law.  Still, plaintiff argues that the trial court could have ignored *Hawkeye* because the trial court's only obligation was to apply the unambiguous terms of the insurance policy.  *Rory v Cont'l Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005), reinforced that:

> A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*.  Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract.  This Court has previously noted that the general rule of contracts is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts. [*Id*.]

Again, the definition of "occurrence" in the policy at issue is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  It omits language from the prior standard policy in which an "occurrence" was based, in part, on the insured's expectations:  "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured*."  Plaintiff notes that appellate decisions lack precedential effect when the facts of the case are different.

However, there are cases that have considered the post-1986 language and still followed *Hawkeye* such that what defines "occurrence" is a principle of law.  First among them is *Radenbaugh v Farm Bureau Gen Ins Co of Michigan*, 240 Mich App 134; 610 NW2d 272, 275 (2000).  The insureds in *Radenbaugh* provided defective instructions to a basement contractor, which resulted in the improper construction of a mobile home.  The home was unusable because of water damage and condensation.  *Id*. at 144-145.  This Court considered the *Hawkeye* decision and queried whether *Hawkeye* was inconsistent with *Bundy*.  It found the cases factually distinguishable in that *Hawkeye* involved damage only to the insured's work product whereas *Bundy* involved more than damage to the insured's own product.  The *Radenbaugh* Court had to look to the definition of "occurrence" – "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" – the same definition at issue in this case.

---

[2] This Court has recognized that CGL policies are generally written on standardized forms developed by the Insurance Services Office, which is a "national insurance policy drafting organization."  *Travelers Prop Cas Co of Am v Peaker Services, Inc*, 306 Mich App 178, 185 n 2; 855 NW2d 523 (2014).

*Id.* at 140. Citing *Hawkeye*, the *Radenbaugh* Court noted: "Were the underlying complaint limited to claims relating solely to the insured's product, we would agree with defendant [that there was no occurrence]. However, it is clear that the underlying complaint alleged damages broader than mere diminution in value of the insured's product caused by alleged defective workmanship, breach of contract, or breach of warranty." *Radenbaugh*, 240 Mich App at 141. This Court then quoted at significant length *Calvert Ins Co v Herbert Roofing & Insulation Co,* 807 F Supp 435 (ED Mich, 1992) and adopted the following language from that opinion as its own:

> The holdings in *Bundy* and [*Hawkeye*] can be reconciled by focusing on the property damage at issue in each case. In [*Hawkeye*], the insured's defective workmanship resulted only in damage to the insured's work product. In *Bundy,* the insured's defective workmanship resulted in damage to the property of others. Taken together, these cases stand for the proposition that when an insured's defective workmanship results in damage to the property of others, an "accident" exists within the meaning of the standard comprehensive liability policy. This construction is supported by the definition of "accident" adopted by the Michigan Supreme Court:
>
> > " . . . In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." . . .
> >
> > . . .Thus the property owners in *Bundy* whose homes or offices were damaged by water leaking from the insured's defective tubing were damaged by accident. However, when the damage arising out of the insured's defective workmanship is confined to the insured's own work product, the insured is the injured party, and the damage cannot be viewed as accidental within the meaning of the standard liability policy.
>
> > The facts of the instant case are not in dispute. The new roof began to leak shortly after Herbert completed the installation and the leaking water caused damage to the interior of the building, the exterior of the building, and to the personal property of students and school district employees. The School District has filed an action against Herbert in state court which sounds in both negligence and contract and seeks recovery for the cost of replacing the roof and for the damage to the school building and its contents. On these facts, the Court holds that Plaintiff is obligated, under the terms of the insurance policy, to defend Herbert against the negligence claim in the underlying state action and to indemnify Herbert for any damages to the school building or its contents for which Herbert is held liable. Plaintiff is under no duty, however, to indemnify Herbert for the cost of removing the defective roof and/or installing a new roof. [[*Calvert Ins Co*, 807 F Supp] at 437–439.]

We agree with the reasoning of the *Calvert* court and hereby adopt its analysis as our own. [*Radenbaugh*, 240 Mich App at 147–148.]

*Radenbaugh* held that, because the damage was to property other than the insured's work product, the insureds properly alleged an "occurrence." *Id*. *Radenbaugh* examined the precise policy term at issue before the panel and clearly affirmed *Hawkeye's* admonishment that an "occurrence" cannot include an accident that results in damage to the insured's own work product. That *Calvert* may have involved the pre-1986 policy language does not change the fact that this Court continued to embrace its rationale, quoting it over several pages.

This Court relied on *Radenbaugh* in *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 38; 772 NW2d 801 (2009), wherein this Court confirmed that an accident can arise from the insured's negligence or breach of warranty, if the damage extended beyond the insured's own work product. Again, the policy provision at issue in *Liparoto* defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 35. After discussing *Bundy, Hawkeye, Radenbaugh,* and *Calvert* cases at length, the *Liparoto* Court concluded:

> In this case, "occurrence" is defined in the same manner as it was defined in *Radenbaugh*. The definition of "occurrence" in *Hawkeye–Security* is more detailed, but is not significantly different in substance. This Court in *Radenbaugh* held that damage resulting from negligence or breach of warranty would constitute an occurrence triggering the policy's liability coverage only if the damage in question extended beyond the insured's work product. Here plaintiff did not allege, and presented no evidence, that there was damage beyond its own work product. Accordingly, the trial court did not err by concluding that plaintiff failed to establish an occurrence within the meaning of the policy. [*Liparoto*, 284 Mich App at 38–39.]

The matter is well-settled. We hold that the trial court properly applied *Hawkeye* to this case. It is an established principle of law that an "occurrence" cannot include damages for the insured's own faulty workmanship.

However, the trial court erred when it failed to decide, as a matter of law, that the incident was not an "occurrence" under the policy. There were no factual issues to resolve. If, as the trial court ruled, the CGL policy does not cover defective workmanship within the scope of the original project under *Hawkeye*, the summary disposition analysis turned on evidence of the scope of the repair and replacement work as compared to the scope of the original project. Amerisure presented evidence to demonstrate that all of the repair and replacement work was within the scope of plaintiff's original project through Martin's testimony. Once Amerisure presented that evidence, the burden shifted to plaintiff to present evidence that the repair and replacement work included tasks or property beyond the scope of the original project. MCR 2.116(G)(4); see also *Liparoto,* 284 Mich App 38-39 (plaintiff has burden of demonstrating damage beyond the scope of the contractor's own work product). Plaintiff presented no evidence or argument concerning the scope of its repair or replacement work. Accordingly, MCR 2.116(G)(4) required that summary disposition be entered against plaintiff.

Amerisure is entitled to judgment as a matter of law because coverage was not triggered due to lack of an "occurrence" and there is no genuine issue of material fact that the only damage was to plaintiff's own work product (rather, that of its subcontractor). Because there is no

coverage, there is no need to address whether any of the exclusions apply or whether conditions precedent were met.

Reversed and remanded with orders to enter summary disposition in favor of Amerisure. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly